336 P.2d 107

**SNAKE RIVER MUTUAL FIRE INSUR-ANCE COMPANY, Plaintiff-Appellant,**

v.

**P. G. NEILL, State Tax Collector of the State of Idaho, Defendant-Respondent.**

No. 8656.

Supreme Court of Idaho.

Feb. 12, 1959.

On Objection to Allowance of Costs
March 10, 1959.

Clemons, Skiles & Green, Boise, for appellant.

Frank L. Benson, Atty. Gen., Dwight F. Bickel, Asst. Atty. Gen. (Graydon W. Smith, former Atty. Gen., Elbert E. Gass and Edward J. Aschenbrener, former Asst. Attys. Gen., on the brief), for respondent.

TAYLOR, Justice.

Plaintiff (appellant) paid franchise taxes based upon its net income, under the provisions of the Property Relief Act of 1931, I.C., Title 63, Chapter 30, as amended, for the years of 1951, 1952, 1953 and 1954. November 22, 1955, plaintiff made demand for refund of the taxes paid for those years on the ground that plaintiff was a mutual fire insurance company and as such exempt from the tax under I.C. § 63–3029, subd. 9, which provides:

"The following organizations shall be exempt from taxation under this chapter:

\*   \*   \*   \*   \*   \*

"9. Farmer's or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters of the same class) the income of

which is used or held only for the purpose of paying losses or expenses;"

A portion of the tax for 1951 was paid more than three years prior to the demand for refund. Refund of that portion of the 1951 tax was denied under authority of I.C. § 63–3068, as amended, which provides:

"The commissioner is authorized to credit or remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected, regardless of whether the same have been paid under protest, which claims for refund shall be certified to the state board of examiners by the commissioner, and by the board ordered paid.

"All claims for the refunding or crediting of any tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must be presented to the commissioner within three years next after the payment of such tax, penalty, or sum."

Defendant (respondent) state tax collector admits that plaintiff was organized as a domestic mutual fire insurance company, but contends during the years in question it was not operating as a mutual company and was therefore subject to the taxes imposed and collected. He contends that plaintiff accumulated and held an excessive surplus; that because the amount of surplus held was larger than needed to pay foreseeable losses and expenses, it was not held and used for that purpose only, but was held and used for other purposes. Other purposes mentioned are: expansion of its business, investment for profit, and payment of premiums for reinsurance.

Plaintiff was organized as a county mutual fire insurance company April 2, 1900. It was reorganized as a domestic mutual fire insurance company November 2, 1943. It does not insure nonmembers. All its policyholders are members. Each member has a vote at all meetings of members. Directors are elected by the members and the by-laws may be altered or amended by the membership. The members are the owners of the corporation and all its assets, and are entitled to share pro rata in the distribution of such assets on dissolution. Since its reorganization in 1943 plaintiff has not made any assessment upon its members to meet losses or expenses, nor has it made any rebate of premiums or distribution of surplus to its members.

In 1952, plaintiff, having accumulated assets of $300,000 over liabilities and re-

serves, as required by law (I.C. § 41–411), was thereafter authorized by the state to write other forms of insurance in addition to fire. It was also authorized to, and did, extinguish the contingent liability of its members to assessment, and thereafter issued nonassessable policies only; but to continue to be so authorized and to so operate, plaintiff must maintain that financial position, and must maintain a surplus, including deposits with the department of insurance, of not less than $300,000. I.C. §§ 41–411, 41–2233.

From 1943 to 1954, inclusive, plaintiff's premiums earned, losses and expenses paid or incurred, net gain or loss, and surplus, were as follows:

| Year | Premiums Earned | Losses and Expenses | Gain or Loss | Surplus |
|------|-----------------|---------------------|--------------|---------|
| 1943 | 19,722.47 | 44,727.55 | –25,005.08 | 29,137.34 |
| 1944 | 79,929.93 | 82,012.19 | – 2,082.26 | 68,925.50 |
| 1945 | 86,252.70 | 56,946.01 | 29,306.69 | 134,260.02 |
| 1946 | 98,060.38 | 85,210.20 | 12,850.18 | 117,253.77 |
| 1947 | (No figures) | | | |
| 1948 | 135,505.15 | 137,774.80 | – 2,269.65 | 145,421.68 |
| 1949 | 179,168.05 | 176,009.51 | 3,860.60 | 156,340.06 |
| 1950 | 217,348.10 | 183,017.36 | 34,330.74 | 206,997.94 |
| 1951 | 251,419.04 | 165,808.01 | 85,611.03 | 323,366.31 |
| 1952 | 286,749.89 | 236,271.47 | 50,478.42 | 384,742.75 |
| 1953 | 332,730.26 | 305,034.33 | 27,695.93 | 409,308.89 |
| 1954 | 388,030.00 | 357,898.20 | 30,131.80 | 432,095.53 |

It is noted that losses and expenses exceeded premiums earned in the years 1943, 1944 and 1945. In 1943 the surplus did not greatly exceed the $25,000 cash deposit required by I.C. § 41–2201, then in effect. During subsequent years the surplus was built up as the earnings increased and as the risks assumed increased. The evidence does not show the outstanding risk for the years prior to 1954. In the latter year it was shown to be approximately $100,000,000. When compared to the risk outstanding at that time, the surplus of $432,095.53 does not appear to be excessive. It was only a little more than .43 of 1% of the outstanding risk.

The evidence offered by the defendant is to the effect that such surplus was not excessive. The state commissioner of insurance, the only witness called by the defense, testified:

"Well, of course, there is the safety factor in having excessive surplus in

excess of their requirements. Those requirements are minimum as to what a company should have in order to write a nonassessable policy and, of course, the more surplus they have the more business they can write, the more expansion they can enter into, and after all they have to buy reinsurance; possibly to enable them to cut down on the reinsurance they are buying, and they can carry more insurance net and make more profit. There's a lot of reasons why they should have excessive surplus in excess of the legal requirements because the legal requirements are always a minimum, not necessarily what is absolutely necessary."

It was also shown by this witness that if the company maintained only the bare minimum of surplus required by the statute it could not write new policies, because the expense involved in issuing new policies exceeds the initial premium and to that extent would impair the required surplus, and that the company in such case must have either excess surplus or adequate reinsurance. This witness also testified that in his opinion the surplus held by plaintiff was adequate, but he did not say it was excessive.

Mr. Barraclough, secretary-treasurer of plaintiff, qualified as an expert, testified that the surplus held by plaintiff was a prudent surplus in view of the risk outstanding. He also testified to an operating loss charged to surplus in 1946 of over $17,000; and that in 1955 the operating loss was $65,000, of which slightly less than $20,000 was charged to surplus and the balance was covered by income from other sources.

The trial court's finding No. 25 is:

"That plaintiff failed to sustain the burden of proving that during the years 1951, 1952, 1953 and 1954, the surplus held by it was reasonably necessary to pay probable future losses and expenses."

If this finding is intended to mean that the past history of the company indicates that it would be able to pay its ordinary losses and expenses without serious impairment of a smaller surplus than actually held, then the finding may be said to be supported by the record. However, it is obvious that the finding does not take into account any extraordinary or unforeseen losses which could have occurred in an area where plaintiff was extensively committed. Such a contingency is indicated by the loss in 1955.

The law which requires surplus of $300,000 as a condition to plainitff's privilege of writing classes of insurance other than fire, and its right to extinguish the contingent liability of its policyholders and issue nonassessable policies, refers to that amount as a minimum requirement. I.C.

§§ 41–411, 41–2233. This implies that a reasonable excess thereof is both prudent and desirable.

■■ The discretion is vested in the board of directors to determine, in the first instance, what that reasonable excess should be. Unless the amount thereof so far exceeds all reasonable contingencies as to indicate a purpose on the part of the company to hold and use such surplus for a purpose or purposes other than the payment of losses or expenses, neither the tax collector nor the court should say that it has forfeited the exemption granted by the legislature. Order of Railway Employees v. Com'r of I. R., 2 T.C. 607; Greeff v. Equitable Life Assur. Soc., 160 N.Y. 19, 54 N.E. 712, 46 L.R.A. 288

Mr. Barraclough testified positively that during the years of his employment by plaintiff, and the years involved herein, the income of the company has been spent for the payment of losses and expenses and for no other purpose. There is no evidence that any part of plaintiff's income was used or held for any purpose other than the payment of losses or expenses.

The exemption granted by the legislature recognizes that a mutual insurance company is engaged in business for the purpose of providing insurance to its members substantially at cost. The state commissioner of insurance testified plaintiff operates under a deviation schedule, approved by him, which authorizes it to furnish insurance to its members at rates 25% less than rating bureau rates used by stock companies. I.C. § 41–2006.

■ The plaintiff has paid out money in premiums for reinsurance. The defendant does not contend that by so doing it has ceased to be a mutual company, or has improperly used the portion of its income so expended. It is the contention of the defendant that reinsurance is one of the factors which make the excess surplus held unnecessary. Obviously the expenditure for reinsurance is for the benefit of the policyholders. Insofar as it is necessary or prudent it is a legitimate part of the cost of their insurance. Furthermore, as testified by the insurance commissioner, a larger surplus would enable the plaintiff to reduce the amount of reinsurance required and thus effect a saving in the cost of insurance to its members.

■ The plaintiff has invested a substantial amount of its capital and surplus in various qualified securities, from which it receives a substantial income. Such investment did not destroy plaintiff's standing as a mutual company, nor deprive it of its exempt status. Mutual Fire, Marine and Inland Ins. Co. v. Com'r of I. R., 8 T.C. 1212. The investment is not only good business but is in the interest of the policyholders. The income therefrom con-

stitutes a factor in lowering the cost of their insurance. Securities of the class held are such as ordinarily are readily convertible to cash should any catastrophe require such action. These assets stand in the place of the income invested therein. They are income converted to securities and are held for the payment of losses or expenses. Having extinguished the contingent liability of its members to assessment, the company must have sufficient reserves and surplus to absorb unusual, as well as usual, losses. This is shown by its experience in 1955, when the income from its investments was the means of covering the major portion of its unusual operating loss.

■ There being no evidence in the record that any part of plaintiff's income during the years involved has been held or used for any purpose other than the payment of losses or expenses, the findings to the contrary are without support. The conclusion and judgment to the effect that plaintiff did not hold and use its income only for the purpose of paying losses and expenses, and in consequence thereof was subject to the tax collected, are in error. See opinion of Charles Oliphant, Internal Revenue Bulletin, Cumulative Bulletin, 1948, −1, p. 60.

■ The judgment is reversed and the cause is remanded with directions to enter judgment for the plaintiff for refund of the taxes paid, with interest as allowed by statute, excepting that part of the 1951 tax which was paid more than three years prior to the demand for refund.

Costs to appellant. I.C. §§ 63–3076, 63–3403(c).

PORTER, C. J., and SMITH, KNUDSON and McQUADE, JJ., concur.

On Objection to Allowance of Costs.

TAYLOR, Justice.

Subsequent to the filing of the opinion herein, the respondent tax collector filed objection to the allowance of costs to appellant, citing Chastain's Inc. v. State Tax Commission, 72 Idaho 344, 241 P.2d 167. In that case Justice Thomas based the allowance of costs against the state upon the statutes (I.C. §§ 7–312, 7–404) expressly providing for costs in favor of a successful applicant for prohibition. However, he also called attention to the fact that the legislature had authorized the tax commission to sue and be sued.

Here the applicable statutes authorize the tax collector to sue for the collection of taxes (I.C. §§ 63–3078, 63–3092). The taxpayer is authorized to sue the tax collector for the recovery of taxes erroneously or illegally collected (I.C. § 63–3075). Any party to such proceedings in the district court may appeal to the supreme court from the judgment of the district court (I.C. § 63–3076). This latter section also express-

ly provides that when an appeal is taken by the tax collector he shall not be required to give an undertaking for costs.

In Walker v. Wedgwood, 64 Idaho 285, 130 P.2d 856, costs were allowed against the tax commissioner. However, the authority for the allowance was not referred to.

Under the foregoing statutory provisions, costs are taxable against the state by necessary implication.

SMITH, KNUDSON and McQUADE, JJ., concur.