## AGASSIZ & ODESSA MUTUAL FIRE INSURANCE COMPANY AND OTHERS
### v.
## CYRUS E. MAGNUSSON, COMMISSIONER OF INSURANCE.

136 N. W. (2d) 861.

August 20, 1965—No. 39,492.

*Scallen, Stone, Evidon & Harder, Raymond A. Scallen, Robert Kucera, Tomasek & Vogel,* and *F. W. Tomasek,* for appellants.

*Robert W. Mattson,* Attorney General, *Robert A. Albrecht,* Assistant Attorney General, and *David M. Lebedoff,* Special Assistant Attorney General, for respondent.

*Hansen & Hazen, Horace R. Hansen,* and *Wayne P. Dordell,* for Farm Mutual Reinsurance Association, amicus curiae.

KNUTSON, CHIEF JUSTICE.

Action by 28 township mutual fire insurance companies licensed under Minn. St. c. 67 to enjoin Cyrus E. Magnusson, commissioner of insurance of the State of Minnesota, from taking any action under an order issued by him on October 23, 1962, which directed plaintiffs to

terminate their reinsurance contracts with Grinnell Mutual Reinsurance Company of Grinnell, an Iowa corporation licensed to do a reinsurance business in Minnesota, referred to herein as Grinnell, and which ordered them to refrain from entering into any new reinsurance agreements with this company.

Based upon a stipulation of the parties the court made findings and ordered judgment upholding the order described and a similar order dated February 25, 1960. Plaintiffs' subsequent motion for amended findings or for a new trial was denied. This appeal is from the last order and from the judgment entered against plaintiffs.

In a stipulation of facts, the parties agreed:

That plaintiffs have engaged in business as township mutual fire insurance companies for many years; that as of December 31, 1962, their combined membership exceeded 50,000 persons; that on that date the total face value of policies issued by plaintiffs was $505,071,554; that adequate, competent, and responsible reinsurance is essential to the conduct of an insurance business; and that each of the plaintiffs has reinsured their risks under contracts with Grinnell Mutual Reinsurance Company of Grinnell, Iowa, an Iowa corporation licensed and qualified to conduct a reinsurance business in Minnesota.

That the continuance of plaintiffs' present insurance contracts with Grinnell is economically advantageous to them in that policies issued to them by Grinnell are nonassessable, guaranteed premium policies; and for the further reason that Grinnell provides certain services to plaintiffs, including a program for the prevention and control of losses; an investigative service with reference to claimed losses; an engineering service for loss prevention, analysis of losses, and reduction of hazards; a service for improving office procedures, records, and accounting practices; and an educational program for training officials of the plaintiffs.

That as an alternative, if the orders of the commissioner are upheld, plaintiffs will be required to either reinsure with each other pursuant to § 67.33, subd. 1, which would be economically hazardous and disadvantageous to plaintiffs; or to organize a mutual association for reinsurance purposes under § 67.45 which likewise would be economically

hazardous and disadvantageous to plaintiffs; or to reinsure with Farm Mutual Reinsurance Association of Esko, Minnesota, referred to herein as Esko, which is the only mutual association in Minnesota organized for reinsurance purposes under § 67.45.

That plaintiffs in the exercise of their business judgment have no desire to reinsure their policies with Esko.

The statutes involved, in chronological order, provide as follows:

Minn. St. 67.12. "It shall be lawful for any number of persons, not less than 25, residing in adjoining towns in this state, who shall collectively own property worth at least $50,000, to form themselves into a company or corporation for mutual insurance against loss or damage by fire or lightning. No such company shall operate in more than 150 towns in the aggregate at the same time; provided, that when any such company confines its operations to one county it may transact business in the whole thereof by so providing in its certificate of incorporation." L. 1909, c. 411, § 1, as amended.

Minn. St. 67.40. "Except as therein provided, all township mutual fire insurance companies heretofore or hereafter organized in this state shall be governed by Laws 1909, Chapter 411 and exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter passed shall apply to the company unless it shall be expressly designated in the law that it is applicable to township mutual fire insurance companies." L. 1909, c. 411, § 24.

Minn. St. 67.27, subd. 3. "No law relating to insurance companies now in force in this state shall apply to township mutual fire insurance companies unless it shall be expressly designated in the law that it is applicable to these companies." L. 1915, c. 107, § 1.

Minn. St. 67.45. "Not less than six duly licensed township mutual fire insurance companies or farmers' mutual fire insurance companies may organize a mutual association for the purpose of reinsuring any part or all of any risk or risks, written by any of the member companies." Ex. Sess. L. 1919, c. 55, § 1, as amended.

Minn. St. 67.33, subd. 1. "Township mutual fire insurance companies may enter into reinsurance agreements with other township mutual fire insurance companies and reinsure a portion of any risk with these companies. In these cases they shall not be confined to the territory in which they are writing direct business." L. 1927, c. 271.

Minn. St. 67.33, subd. 2. "Any township mutual fire insurance company may become a member of a reinsurance association such as provided for under sections 67.45 to 67.54, for the purpose of reinsuring any part or all of any risk or risks written by it." L. 1957, c. 285, § 1.

In its findings and conclusions the court determined:

"Chapter 67 of Minnesota Statutes is the exclusive law governing township mutual fire insurance companies * * * except insofar as other insurance statutes expressly state that they are applicable to these companies.

"Section 67.33 and Sections 67.45 to 67.54 * * * prescribe the exclusive means by which township mutual companies * * * may reinsure their primary insurance risks. * * * Reinsurance provisions stated in other chapters of Minnesota Statutes granting general reinsurance powers do not expressly mention township mutual companies and therefore do not apply to them. [See, §§ 67.40 and 67.27, subd. 3.] The plaintiff companies have no implied power nor right by common law to enter into reinsurance contracts, except as expressly authorized in Chapter 67 of Minnesota Statutes, since the Legislature has chosen to regulate the business of reinsurance in this state.

"The reinsurance contracts entered into between the plaintiff companies and Grinnell Mutual Reinsurance Company of Grinnell, Iowa, are not authorized by Minnesota Statutes * * *.

"The orders of the defendant * * * dated February 25, 1960, and October 23, 1962, directing plaintiffs to terminate said reinsurance contracts are lawful * * *."

In a memorandum accompanying the findings, the trial court stated:

"Since the Legislature has undertaken the regulation of reinsurance,

there is no significance in use of the word 'may' in Sections 67.33 and 67.45, or in 60.54, beyond signifying what is permissible in this field.

\* \* \* \* \*

"\* \* \* [T]he Court \* \* \* finds the conclusions inescapable that Sections 67.33, subd. 1 and 67.45 provide the only authorized methods of reinsurance available to township mutual companies."

On appeal plaintiffs contend that they have an inherent right at common law, and an implied right under Minn. St. c. 67, to enter into reinsurance agreements with any reinsurance company licensed to do business in Minnesota, whether of foreign or domestic origin, provided requirements of financial responsibility are met by it; that Grinnell has met the financial requirements of defendant for license to conduct a reinsurance business here and accordingly since the date it was so licensed (1948) plaintiffs have had the right to enter into reinsurance agreements with it; that the statutes relied upon by the commissioner and the court—§§ 67.45 and 67.33, subd. 1—provide merely that township mutual fire reinsurance companies *may*, if they so desire, reinsure their risks with reinsurance associations comprised of township mutual fire insurance companies or with other like companies, but that there is no statutory requirement that they must do so and no statutory prohibition against their reinsuring with Grinnell.

■ With respect to common stock corporations, we have held that they may exercise not only the powers expressly granted them by their charters but in addition any power which may be incidental to or reasonably necessary in the performance of their express powers. In re Trusteeship Under Will of Jones, 202 Minn. 187, 277 N. W. 899; Young v. Blandin, 215 Minn. 111, 9 N. W. (2d) 313. Likewise, we have held that no presumption of excess of power attaches to the contracts of such corporations. Equitable Holding Co. v. Equitable Bldg. & Loan Assn. 202 Minn. 529, 279 N. W. 736.

■ When the courts have been called upon to determine which powers may or may not be incidental or necessary to the exercise of the express powers of a corporation, they have held that the former are not limited to those *indispensable* to the corporate purposes, but rather com-

prise all powers that are reasonably necessary and suitable therefor, including the right to exercise discretion in the choice of means to achieve such purposes. Equitable Holding Co. v. Equitable Bldg. & Loan Assn. *supra*; Duluth, S. S. & A. Ry. Co. v. Wilson, 200 Mich. 313, 167 N. W. 55, L. R. A. 1918E, 763; Mutual Bank & Trust Co. v. Shaffner (Mo.) 248 S. W. (2d) 585; 19 Am. Jur. (2d) Corporations, § 953.

■ When these principles have been applied to insurance corporations organized and empowered to insure risks of losses arising from fire or other hazards, it has generally been held that incidental to the express power of such corporations to insure these risks is the implied power to reinsure them with other companies on the theory that such reinsurance is reasonably necessary to the sound conduct of an insurance business. Insurance Co. of North America v. Hibernia Ins. Co. 140 U. S. 565, 11 S. Ct. 909, 35 L. ed. 517; Phoenix Ins. Co. v. Erie & Western Transp. Co. 117 U. S. 312, 6 S. Ct. 750, 29 L. ed. 873; Citizens Cas. Co. v. American Glass Co. (7 Cir.) 166 F. (2d) 91; Sachs v. Ohio Nat. Life Ins. Co. (7 Cir.) 116 F. (2d) 113; Moore v. Security Trust & Life Ins. Co. (8 Cir.) 168 F. 496; Snake River Mutual Fire Ins. Co. v. Neill, 80 Idaho 534, 336 P. (2d) 107; Insurance Co. v. Insurance Co. 38 Ohio St. 11, 43 Am. R. 413. Thus, in Phoenix Ins. Co. v. Erie & Western Transp. Co. *supra*, this implied power was recognized when the court stated (117 U. S. 323, 6 S. Ct. 755, 29 L. ed. 879):

"Contracts of reinsurance, by which one insurer causes the sum which he has insured to be reassured to him by a distinct contract with another insurer, with the object of indemnifying himself against his own responsibility, (though prohibited for a time in England by statute,) are valid by the common law, and have always been lawful in this country; * * *. 3 Kent Com. 278, 279; Sun Ins. Co. v. Ocean Ins. Co., 107 U. S. 485; Mackenzie v. Whitworth, L. R. 10 Ex. 142, and 1 Ex. D. 36."

In Sachs v. Ohio Nat. Life Ins. Co. (7 Cir.) 116 F. (2d) 113, 117, the court recognized the common-law right of an insurance company to reinsure their risks in the following language:

"* * * Our courts have refused * * * to find anything in re-insur-

ance contrary to public policy and fair dealing. * * * 'That a contract of re-insurance is not prohibited by the principles of the common law is admitted by the parties. It is a contract which, in itself, seems perfectly fair and reasonable, and might be productive of very beneficial consequences to those concerned in this important branch of commerce.' "

■ While most of the decisions cited involved common stock corporations rather than mutual companies, there are a number of decisions which tacitly give recognition to this common-law right in the latter organizations. See, Bolles v. Mutual Reserve Fund Life Assn. 220 Ill. 400, 77 N. E. 198; Cooley v. Gilliam, 80 Kan. 278, 102 P. 1091; National Mutual Ins. Co. v. Home Benefit Society, 181 Pa. 443, 37 A. 519; Snake River Mutual Fire Ins. Co. v. Neill, *supra*. Only one decision has been found in which this right was denied—Allison v. Fidelity Mutual Fire Ins. Co. 81 Neb. 494, 116 N. W. 274 (1908). The court's decision there, however, was based upon its conclusion that reinsurance was not *essential* to the business of insuring risks and therefore that contracts for reinsurance were not within the incidental powers of a mutual company. Apparently this conclusion also would have denied the right of common stock insurance corporations to reinsure their risks unless their charters so provided. In the instant case, where the parties have stipulated that "[a]dequate, competent, and responsible reinsurance is *essential* to the conduct of an insurance business" (italics supplied), it is clear that the Nebraska decision would have no application.

■ But it is defendant's contention that even if plaintiffs possessed an implied common-law right or power to reinsure their risks under Minn. St. c. 67, as originally enacted in 1909, any such power was effectively derogated or nullified when the legislature enacted §§ 67.45 in 1919 and 67.33, subd. 1, in 1927.[1] Section 67.45 provides merely that 6 or more

---

[1] Other statutes having reference to reinsurance contracts or relating to the powers of insurance corporations to reinsure their risks have no application to township mutual fire insurance companies under Minn. St. 67.27, subd. 3, and 67.40. This would eliminate from consideration all enactments outside of c. 67 having reference to reinsurance. Determination of the issue presented accordingly is limited to the effect of §§ 67.45 and 67.33, subd. 1, upon plaintiffs' common-law right to reinsure.

duly licensed township mutual fire insurance companies *may* organize a mutual association for the purpose of reinsuring their risks, while § 67.33, subd. 1, provides that such township mutual fire insurance companies *may* enter into reinsurance agreements with like companies. It is to be noted that both of these sections use the word "may" in authorizing such companies organized under c. 67 to reinsure their risks with the associations or companies specified therein. Neither of them is mandatory in this respect, nor is there any language therein which prohibits them from reinsuring their risks with other companies organized and licensed for that purpose in Minnesota. Section 645.44, subd. 15, specifically provides that when the word "may" is used in a statute it is permissive only unless another intention clearly appears therein,[2] and it is generally recognized that before a statute may be construed as mandatory it must contain negative terms importing a plain legislative intent that acts authorized therein are to be performed only in a prescribed manner; or language manifesting a positive legislative prohibition against their performance in ways other than those specified. 50 Am. Jur., Statutes, § 29. It is also well established that the words "may" and "shall", when used in statutes, ordinarily are not to be construed as interchangeable but are to be given their literal meanings unless a contrary legislative intent appears. See, State v. Jones, 234 Minn. 438, 440, 48 N. W. (2d) 662, 663; 50 Am. Jur., Statutes, § 30.

Careful research has failed to reveal any statutory provisions in Minn. St. c. 67, or elsewhere, which manifest a legislative intent to restrict or derogate the common-law right of township mutual fire insurance companies to reinsure their risks, or to preempt the field of reinsurance with respect to these companies.[3] Likewise, we have found noth-

---

[2] Minn. St. 645.44 provides: "Subdivision 1. The following words, terms and phrases used in Minnesota Statutes or any legislative act shall have the meanings given them in this section, unless another intention clearly appears.

\* \* \* \* \*

"Subd. 15. 'May' is permissive."

[3] It seems clear from its language that § 67.27, subd. 3, which provides that "[n]o law relating to insurance companies now in force in this state shall apply to township mutual fire insurance companies unless it shall be

ing which would manifest a legislative intent that a foreign insurance company licensed to conduct an insurance business in Minnesota would be prohibited by statute from reinsuring the risks of township mutual fire insurance companies. Had the legislature intended such limitations or prohibitions by its enactment of §§ 67.45 and 67.33, subd. 1, it seems certain that it would have used language therein clearly expressive of such intent. Ordinarily statutes are presumed not to alter or modify the common law unless they expressly so provide, State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603; Braufman v. Hart Publication, Inc. 234 Minn. 343, 48 N. W. (2d) 546, 25 A. L. R. (2d) 1030; and a statute intended to regulate a lawful business will not be construed to impose absurd restrictions or unreasonable burdens upon it unless clearly provided for therein. Cameron v. N. P. Ry. Co. 234 Minn. 355, 48 N. W. (2d) 540; State v. Levine, 173 Minn. 322, 217 N. W. 342. Thus, in State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra*, which concerned the common-law right of stockholders to inspect the books of a corporation and the effect of a statutory enactment which partially defined such right, the court stated (200 Minn. 6, 273 N. W. 606):

"* * * The statute does not contain any clause repealing, restricting, or abridging the [common-law] rule then in effect. Such statutes are universally held not to abridge, restrict, or repeal, but to enlarge, extend, and supplement, the common-law rule. * * *

"The conclusion is inescapable that the common-law right of inspection continues to exist, enlarged, extended, and supplemented by the provisions of § 7470 [Mason St. 1927, § 7470], in the cases to which it applies."

■ Likewise, the maxim, "The expression of one thing is the exclusion of another" does not require the construction of § 67.45 and

---

expressly designated in the law that it is applicable to these companies," has reference to other legislative enactments relating to insurance companies and not to the existing common-law right of insurers to reinsure their risks. Also, it seems clear that there is nothing in § 67.40 which derogates this common-law right.

§ 67.33, subd. 1, sought by defendant. This conclusion is supported by N. P. Ry. Co. v. City of Duluth, 243 Minn. 84, 88, 67 N. W. (2d) 635, 638, where we stated:

"* * * [T]he issue here is * * * whether the statutes quoted * * * require that the proceedings be instituted only by those enumerated [therein] * * *. Therefore, the question becomes * * * whether or not the legal maxim 'The expression of one thing is the exclusion of another * * *' is applicable * * *. This maxim is * * * a rule of construction and not of substantive law and serves only as an aid in discovering legislative intent when not otherwise manifest. * * *

* * * * *

"It is * * * our opinion that, by failing to expressly name railroad companies in § 219.39 [relating to procedure before the Railroad and Warehouse Commission], the legislature did not intend to preclude a railroad company from making an application to the commission * * * for an order permitted * * * under § 219.40."

■ So here we conclude that the legislature by designating the organizations with which township mutual fire insurance companies might reinsure their risks did not intend thereby to preclude them from reinsuring such risks with other organizations licensed in the state for such purposes. To hold otherwise would require that plaintiffs and like companies terminate their advantageous reinsurance contracts with a duly licensed, qualified, and financially sound reinsurance corporation and seek reinsurance protection in a noncompetitive market where available reinsurance contracts lack many of the beneficial features of the present contracts. Such a construction of § 67.45 and § 67.33, subd. 1, would imply that the legislature intended to impose unreasonable burdens and restrictions on township mutual fire insurance companies in the absence of any need or requirement therefor and would require us to disregard the statutory presumption expressed in § 645.17(1) that "[t]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable." See, Wichelman v. Messner, 250 Minn. 88, 83 N. W. (2d) 800, 71 A. L. R. (2d) 816; In re Order of Superintendent of

Schools, Nobles County, 239 Minn. 233, 58 N. W. (2d) 465; Cameron v. N. P. Ry. Co. 234 Minn. 355, 48 N. W. (2d) 540.

From the foregoing it follows that the orders of defendant which required plaintiffs to terminate their reinsurance contracts with Grinnell and which prohibited them from entering into reinsurance contracts with that company in the future were invalid.

The judgment appealed from is reversed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.