Diane MILBRADT, et al., Plaintiffs,

Mutual Service Insurance Co., Applicant for Intervention,

v.

AMERICAN LEGION POST OF MORA, et al., Defendants.

Brian MILBRADT, Plaintiff,

Mutual Service Insurance Co., Appellant,

v.

AMERICAN LEGION POST OF MORA, Respondent,

City of Mora, et al., Defendants.

Nos. C0–84–265, C8–84–482.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Peter E. Lind, Jeffrey M. Bauer, Foster, Waldeck & Lind, Ltd., Minneapolis, for American Legion Post of Mora.

John P. Borger, Scott P. Drawe, Faegre & Benson, Minneapolis, for City of Ogilvie.

Kevin A. Spellacy, Quinlivan & Williams, Gerald L. Hasselbrink, St. Cloud, for Mutual Service Insurance Co.

Rolf E. Gilbertson, Seth Colton, Richard T. McHaffie, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for City of Mora, et al.

Heard by PARKER, P.J., and CRIPPEN, J.; considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This is a consolidated appeal brought by Mutual Service Insurance Company (MSI) from entry of summary judgment on behalf of respondents City of Ogilvie, City of Mora, and the American Legion Post of Mora (Mora Legion Post). MSI had paid basic economic loss benefits to its insured, Diane Milbradt, following an accident claiming the life of her husband. Mrs. Milbradt subsequently brought a dram shop action against the respondents, eventually settling with all defendants by means of *Pierringer* releases. MSI brought a subrogation action against the respondents and also moved to intervene in the dram shop action. Its motion to intervene was denied, and that order was not appealed. Summary judgment was entered against it in the subrogation action based on the settlements and *Pierringer* releases, and this appeal followed. We affirm.

## FACTS

Craig Milbradt was a passenger in a one-car accident on July 14, 1978, and died two weeks later of his injuries. The Milbradts were insured under two no-fault automobile policies by appellant MSI, which paid $50,000 to Milbradt's widow and surviving children between August 1978 and June 1979.

Since the driver of the vehicle, the deceased's brother, Brian Milbradt, had been served intoxicating liquor at the establishments of the three respondents on the night of the accident, Mrs. Milbradt also had a dram shop claim against the respondents. Minn.Stat. § 340.95. This action was brought in July 1979. By that time the insured had settled with two of the respondents, the City of Ogilvie and the Mora Legion Post, and executed *Pierringer* releases (dated May 31, 1979). The district court had approved the proposed settlement and distribution of the proceeds on behalf of the minor children. The City of Ogilvie and the Mora Legion, therefore, answered, claiming the *Pierringer* releases as an affirmative defense. They later moved for summary judgment.

Mrs. Milbradt also brought a wrongful death action against the driver of the vehicle, Brian Milbradt. The trial court ordered a consolidation of the wrongful death and dram shop actions as to issues of liability. These cases did not go to trial, however, as the insured reached settlements with both respondent City of Mora, the remaining dram shop defendant, and Brian Milbradt.

The amounts of the settlements with all defendants are as follows:

| | |
|---|---|
| City of Ogilvie | $30,000 |
| American Legion of Mora | 45,000 |

City of Mora 17,500
Brian Milbradt 25,000

The total amount of the settlements was $117,500.

MSI brought an independent action against the respondents in July 1979, claiming a right of subrogation against them for the amount of basic economic loss benefits which it had paid to the insured. MSI also moved to intervene in the dram shop action. The motion to intervene was opposed by the insured's attorney, who presented an economist's report stating that the family's total economic loss was over $350,000. The motion to intervene was denied, and entry of judgment followed in the dram shop action.

The respondents then sought summary judgment in the subrogation action brought by MSI. Summary judgment was ordered for the respondents on the subrogation claims made by MSI, which appealed.

### ISSUES

1. Does the statute give the insurer a subrogation claim where the insured's recovery against a tortfeasor does not represent a duplication of benefits paid?

2. Is the statutory right of subrogation the insurer's exclusive subrogation remedy?

### DISCUSSION

#### I

Minn.Stat. § 65B.53, subd. 3, provides:

A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. *This right of subrogation exists only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.*

(Emphasis supplied).

█ We think it is clear that, where subrogation is for payment of basic economic loss benefits, the statute only permits subrogation where the insured would receive a double recovery.

█ We recognize that such a statutory limitation is in derogation of the common law and must be strictly construed. *See Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson*, 272 Minn. 156, 136 N.W.2d 861 (1965) (right to reinsure risks). The statute, however, unambiguously limits such rights to cases of duplicative recovery, leaving no room for construction. *Lenz v. Coon Creek Watershed District*, 278 Minn. 1, 153 N.W.2d 209 (1967).

█ This limitation accords with two of the primary purposes of the No-Fault Act: (1) to provide full compensation to the accident victim, and (2) to avoid over-compensation. *Pfeffer v. State Auto. and Cas. Underwriters Ins. Co.*, 292 N.W.2d 743, 747 (Minn.1980). In *Pfeffer* the limitation was applied, though not required by the existing statute, the Court holding that subrogation rights to settlement proceeds did not exist until the insured had been fully compensated, although the statute provided subrogation "to the extent of benefits paid or payable," Minn.Stat. § 65B.53, subd. 2 (amended 1976); *see also Milbank Mutual Ins. Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974) (interpreting pre-No Fault statute with reference to purpose of uninsured motorist insurance).

#### II

MSI claims a right of subrogation, independent of the statute, existing against the respondents. MSI relies in part on *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), in which the Supreme Court observed that subrogation rights depend on "general principles of equity and the nature of the contract of insurance." 338 N.W.2d at 262. As the Court found in *Schmidt*, the equities, as between the underinsurer and the underinsured tortfeasor, favor the insurer. 338 N.W.2d at 263.

*Schmidt*, however, involved subrogation for benefits paid by reason of an underin-

sured motorists provision. Underinsured motorist coverage, while formerly required to be offered by the No-Fault Act, Minn. Stat. § 65B.49, subd. 6(e) (1978), is a coverage under which payment is conditioned on the legal liability of another party. Similarly, the other cases cited by MSI in support of an independent subrogation action for basic economic loss benefits do not involve the no-fault system. *See Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699 (Minn.1983) (reimbursement for medical expenses paid by health maintenance organization for auto accident injuries); *Great Northern Oil Co. v. St. Paul Fire and Marine Ins. Co.*, 291 Minn. 97, 189 N.W.2d 404 (1971) ("all risk" insurance).

The prompt payment of basic economic loss benefits without regard to fault is at the heart of our no-fault system. Minn. Stat. § 65B.42, subd. 1. Every motorist is required to carry insurance which includes a provision for payment of basic economic loss benefits by his own insurer. Minn. Stat. §§ 65B.47, subd. 4, 65B.48, subd. 1, and 65B.49, subd. 1. Unlike the optional coverage for underinsured motorists involved in *Schmidt*, the subrogation rights of the insurer providing basic economic loss benefits have a direct impact on the operation of the no-fault concept. Subrogation, as a right to the recovery due the insured by reason of a legal liability, arises in a fault context.

No-fault automobile insurance is intended to displace the common-law fault system as the primary means of compensating the victims of automobile accidents. Minn.Stat. § 65B.42, subd. 1; *see also Haugen v. Town of Waltham*, 292 N.W.2d 737 (Minn.1980). The injured motorist, however, may resort to the tort system for recovery of non-economic detriment, provided the tort threshold is met. Minn.Stat. § 65B.51, subd. 3. If the claim is not based in negligence in the "maintenance, use or operation of a motor vehicle," Minn.Stat. § 65B.51, subd. 1, such as the dram shop action in this case, resort to the tort system is always available. Minn.Stat. § 65B.51, subd. 3 and subd. 5. Therefore, some accommodation between the common law tort and no-fault systems is required.

The statute subordinates the no-fault insurer's subrogation right to its obligation to provide basic economic loss benefits. In a vehicular negligence action there is a deduction from the insured's recovery in lieu of subrogation. In other actions, including a dram shop case, no subrogation is allowed unless the insured receives a recovery in the tort action duplicative of benefits paid out under the No-Fault Act. Minn. Stat. § 65B.53, subd. 3. MSI, however, urges a recognition of the survival, intact within the no-fault system, of a common-law subrogation right not subject to the statutory limitation.

This result, we believe, would be inconsistent with the policy of the No-Fault Act. A no-fault insurer's right of subrogation is secondary to the full compensation of the accident victim, but it is also inseparable from that right possessed by its insured. The claim that an independent subrogation action may be had against third-party tortfeasors without affecting the insured's full recovery is without merit. The *Pierringer* releases obtained in this case, and in common use, contain an indemnity provision by which the settling insured must indemnify the tortfeasor for claims made against it, including any subrogation claim advanced by its no-fault insurer. Moreover, as a practical matter, insured victims could not settle for the same amounts with tortfeasors if subrogation claims remained outstanding.

A subrogation right independent of the no-fault statute would inevitably affect settlements of tort actions. The insured's recovery not only could be diminished by possible weaknesses in the liability case but would certainly be reduced by the prospect of an outstanding subrogation claim. Weaknesses in the liability case are a risk that must be borne by the litigant. Subrogation, however, is a legal principle that should not be allowed to conflict with the insured's opportunity for full recovery. *See Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983).

## DECISION

An insurer paying basic economic loss benefits to its insured under the No-Fault Act has no subrogation right against the insured's recovery from a tortfeasor or against the tortfeasor unless the recovery represents, in some measure, a duplication of those benefits. There is no common-law right of subrogation independent of this limited statutory right.

Affirmed.