DAVID SKEIM AND OTHERS v. INDEPENDENT
SCHOOL DISTRICT NO. 115 AND OTHERS.

234 N. W. 2d 806.

October 10, 1975—No. 45397.

*Peterson, Engberg & Peterson* and *Robert J. Tennessen,* for appellants.

*Smith, Hilligan & Carpenter* and *Ralph T. Smith,* for respondents.

*Peterson, Popovich, Knutson & Flynn, Peter S. Popovich,* and *Ivars J. Krafts,* for Minnesota School Boards Association, amicus curiae, seeking affirmance.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Plaintiffs appeal from an order for judgment and from an order denying their motion for amended findings or in the alternative for a new trial.[1] Plaintiffs, all of whom are high school teachers who have been employed by defendant school district, alleged statutory and constitutional violations as well as arbitrary and unreasonable action by defendant school board in its requiring plaintiffs to teach on Columbus Day, October 9, 1972; in its refusal to pay plaintiffs for that day upon which plaintiffs refused to teach; in refusing to rehire plaintiff Peggy Fedeler and terminating the contract of plaintiff Gerald Larson; and in refusing to raise plaintiffs' salaries for the 1972-1973 and 1973-1974 school years in accordance with negotiated increased salary schedules. The trial court ordered judgment for defendants and denied plaintiffs' post-trial motions. As we believe plaintiffs were contractually obligated to teach on Columbus Day 1972, we affirm the trial judge's decision that the school board acted properly in refusing to pay plaintiffs for that day. We also affirm the trial judge's decision that the termination of plain-

[1] Although an appeal from an order for judgment is technically deficient, plaintiffs have properly appealed from the order denying their alternative motion for amended findings or a new trial.

tiffs Fedeler and Larson and the refusal to grant plaintiffs their scheduled salary increases for the 1972-1973 school year were proper. We believe, however, that the subsequent refusal to grant those plaintiffs still in the employ of the district scheduled salary increases for the 1973-1974 school year was an unreasonable second penalty for the 1-day absence, and we therefore reverse the trial court's decision on that issue and order judgment to be entered in favor of plaintiffs allowing their salary increases for that school year.

With the exception of plaintiff Fedeler, plaintiffs were all employed by defendant school district during the 1972-1973 school year as secondary school teachers with continuing contracts under Minn. St. 125.12, subd. 4. Plaintiff Fedeler was employed as a probationary teacher under § 125.12, subd. 3. All plaintiffs were similarly employed for the 1971-1972 school year under individual contracts executed by the parties containing a specific provision that each teacher agreed to perform teaching duties on holidays designated as school days by the board. During the 1970-1971 and 1971-1972 school years, Columbus Day had been designated a school day and classes had been held. A copy of the school calendar for 1972-1973 designating Columbus Day, October 9, 1972, as a school day was provided each teacher prior to April 1, 1972.

In March 1972, negotiations for teachers' contracts for the 1972-1973 school year were begun for the first time under the Public Employment Labor Relations Act (PELRA), Ex. Sess. L. 1971, c. 33, Minn. St. 179.61 to 179.76. Negotiations were halted in May 1972 by the necessity of determining which of two teacher's groups, the Cass Lake Federation of Teachers or the Cass Lake Education Association, should be the exclusive representative for the teachers. All plaintiffs are members of the Federation of Teachers. On October 31, 1972, a certification election was held pursuant to § 179.67, and the Education Association was certified as the exclusive representative for the teachers.

The events giving rise to this litigation occurred in large part during the weeks immediately preceding the certification election scheduled for October 31. On October 4, 1972, by letter signed "Cass Lake Federation of Teachers, 2180, AFT," plaintiffs notified the superintendent of schools that they would not teach on October 9 except as substitutes for additional pay. The letter stated as justification plaintiffs' belief that they had no contractual obligation to teach on that day. Also on October 4, the high school principal circulated a notice that school would be held on October 9. Before the holiday, the school superintendent sent a letter to plaintiff David Skeim, who was president of the Cass Lake Federation of Teachers, stating the board's legal position that the teachers were contractually required to teach on Columbus Day and strongly urging that plaintiffs review their decision not to teach. Plaintiffs did not teach on October 9, 1972. On October 18, 1972, the school superintendent notified the school board at its regular meeting that, presumably with its approval, one day's salary would be deducted from plaintiffs' wages for their October 9 absence. At the same meeting, the board adopted a motion providing that tenured teachers who were absent October 9 would not be offered new contracts and teachers without tenure would not be rehired.

On January 17, the school board adopted a resolution to terminate the probationary teacher's contract of plaintiff Fedeler. Upon her request for a reason for the termination, the board stated that it was her Columbus Day absence.

On February 16, 1973, negotiations between the school board and the Education Association resulted in a master teachers' contract for the 1972-1973 and 1973-1974 school years. The master contract contained a grievance procedure, as required by § 179.70, and also contained the following provision concerning salary increases:

"ARTICLE VI
"BASIC SCHEDULES AND RATES OF PAY
"*Section 1. 1972-1973 Salary Schedule:* The wages and sal-

aries reflected in Schedule A, attached hereto, shall be a part of the Agreement for the 1972-1973 school year.

*"Section 2. 1973-1974 Salary Schedule:* The wages and salaries reflected in Schedule B, attached hereto, shall be a part of the Agreement for the 1973-1974 school year.

*"Section 3. Status of Salary Schedule:* The salary schedules are not to be construed as a part of a teacher's continuing contract and the school board, *with proper cause and due notice, reserves the right to withhold increment advancement,* lane changes, or any other salary increase to individual teachers as the school board shall determine." (Italics supplied in part.)

Also on February 16, 1973, the school board passed a motion to issue contracts for the 1972-1973 school year to all teachers recommended for reemployment with the provision that the contract salary of plaintiff teachers be the same as that of the 1971-1972 school year. The stated reason for denying scheduled salary increases to plaintiffs was their absence from school on Columbus Day 1972. On March 15, 1973, the board passed a similar motion to issue contracts for 1973-1974, again stating that because of their 1-day absence from class the salaries of plaintiffs would remain at the 1971-1972 level. In March 1973, plaintiffs Charles Wilson and William Dunham resigned effective at the end of the 1972-1973 school year. On March 8, 1973, the board terminated the contract of plaintiff Larson. None of the plaintiffs' signed and returned the offered contracts for 1972-1973 and 1973-1974.

Before the master contract was completely negotiated, plaintiffs, on February 13, 1973, instituted this action seeking vindication of their refusal to perform their teaching duties on Columbus Day; payment of wages for that day; and injunctive relief prohibiting the termination of plaintiff Fedeler and, presumably because of their knowledge of threatened action by the board, prohibiting any refusal to grant salary increases anticipated under the master contract. On October 17, 1973, plaintiffs served upon defendants their motion for leave to amend their complaint,

seeking additional relief of the payment to plaintiffs of the scheduled salary amounts for the 1972-1973 and 1973-1974 school years, the reinstatement of plaintiff Fedeler, and enjoining defendants from committing any unfair labor practices by discriminating against plaintiffs for belonging to the Cass Lake Federation of Teachers. The record reveals no attempt by defendants to require plaintiffs to follow the grievance procedure embodied in the master contract, since the motion to amend the complaint was agreed to by stipulation and defendants in their answer of October 24, 1973, did not allege a failure to exhaust administrative remedies.

■    The initial question raised on this appeal is whether plaintiffs were obligated to teach on Columbus Day, October 9, 1972. Plaintiffs argue in essence that Columbus Day is a legal holiday under § 645.44, subd. 5; that § 126.13 provides for teaching on Columbus Day only by contractual agreement between teacher and school board; that Minn. St. 1971, § 179.70, subd. 1, a provision of PELRA, had the effect of terminating the individual teaching contracts of plaintiffs to the extent that they required teaching on Columbus Day and, furthermore, is inconsistent with the continuing contract provision of Minn. St. 125.12, subd. 4, and should be considered to have repealed the earlier law to the extent of the inconsistency; and that plaintiffs were therefore not contractually bound to teach on Columbus Day 1972.

We do not agree with this construction of the statutes. It is true that § 645.44 establishes Columbus Day as a legal holiday upon which no public business shall be transacted. Section 126.13, however, authorizes the board of any school district to conduct school on Columbus Day and to contract with any of the teachers to teach on that and other specified holidays provided that a clause to that effect is inserted in the teacher's contract. We believe that the school board was authorized to conduct school on Columbus Day 1972 and to require tenured teachers to teach by virtue of the provision to that effect inserted in each teacher's contract for the previous 1971-1972 school year and the continu-

ing contract provision of § 125.12, subd. 4. Each of the individual contracts for the 1971-1972 school year included the following pertinent language:

"3. Calendar: School year and vacation days shall be those named on the school calendar as adopted by the school board, and the teacher agrees to teach on those legal holidays on which the school board is authorized to conduct school if the school board so determines."

Section 125.12, subd. 4, provides that following a probationary period a teacher has a continuing contract with the school district which shall remain in full force except as modified by mutual consent or until terminated according to the procedure which the statute sets forth. We believe that this continuing contract provision is neither inconsistent with, nor was intended to be abrogated by, those provisions of PELRA which require that terms and conditions of employment be included in the collective bargaining agreement reached between the exclusive representative of the teachers and the employer.[2] Nor was the continuing agreement to teach on designated holidays, in our interpretation of the governing statutes, intended to be terminated by the provision of Minn. St. 1971, § 179.70, subd. 1, that "* * * [c]ontract[s] between employer school board and exclusive representative of teachers shall in every instance be for a term of two years * * *, except, however, such contracts entered into prior to July 1, 1972 shall expire on June 30, 1972," as that provision refers to authorized collective bargaining agreements rather than to individual contracts, even though teaching on holidays may be included in the future as a subject of collective bargaining. Our conclusion is that the school board lawfully determined that school would be held on Columbus Day 1972 and that tenured teachers were obligated to teach on that holiday.

■ While § 125.12, subd. 4, is not applicable to plaintiff Fedeler as a probationary teacher, we believe that she also was

---

[2] Minn. St. 1971, §§ 179.63, subd. 18, and 179.70, subd. 1.

obligated to teach on Columbus Day 1972. Her individual contract for the 1971-1972 school year contained the provision, quoted above, by which she agreed to teach on holidays. She was furnished, like the others, a school calendar for 1972-1973 designating Columbus Day as a school day. She elected to assume her teaching post for the 1972-1973 school year in the absence of a written agreement to do so and was paid a salary in accordance with her 1971-1972 contract. Under these circumstances, we find a contract implied in fact to have existed between plaintiff Fedeler and the school board for the 1972-1973 school year. See, Capitol Warehouse Co. v. McGill-Warner-Farnham Co. 276 Minn. 108, 149 N. W. 2d 31 (1967); 4 Dunnell, Dig. (3 ed.) § 1724. By continuing to teach and to receive her salary after the expiration of her probationary teacher's contract, plaintiff Fedeler impliedly submitted to the general administrative authority of the school board and assented to be bound by its lawful and published determination that school would be held on Columbus Day 1972.

■ We next consider the various actions of the school board taken subsequent to the refusal to teach and complained of by plaintiffs. Plaintiffs' argument that the school board wrongfully refused to pay them their wages for the day on which they did not teach is manifestly without merit. Plaintiffs characterize the refusal to pay as an arbitrary and unreasonable penalty. We cannot agree that this action was either unreasonable or that it was a penalty. Rather, the refusal to pay that day's wages is justified on simple contractual grounds. Plaintiffs contracted to teach and, having failed to do so, have no claim to salary payment for that day.

■ The refusal to rehire plaintiff Fedeler is justified under § 125.12, subd. 3, which provides that a contract with a probationary teacher may or may not be renewed as the school board shall see fit, requiring only that the board give proper notice and state its reason for nonrenewal if requested to do so by the teacher. Here, notice was given, and upon plaintiff Fedeler's request, the reason stated was her refusal to teach on Columbus

Day. We have expressed our reluctance to interfere, so long as the statutory procedures are followed, with a school board's termination of a probationary teacher in Pearson v. Independent School Dist. No. 716, 290 Minn. 400, 188 N. W. 2d 776 (1971), where we construed the statute as vesting unlimited discretion in the board with respect to renewal of a probationary teacher's contract. We believe that plaintiff Fedeler's refusal to teach is a sufficient ground for the exercise of the board's discretionary authority not to renew her contract.[3]

■ Plaintiffs further argue that the board's decision on February 16, 1973, not to grant plaintiffs still in the employ of the school district scheduled salary increases for the 1972-1973 school year for the sole stated reason of the Columbus Day absence was an unreasonable and excessive penalty. Our consideration of this issue is hampered by the fact that no hearing or grievance procedure has ever been requested or sought by any of the parties, with the result that the record discloses no clear indication of the claimed authority or suggested improper reason for the school board's action. None of the parties made any effort to confront the others in a hearing, formal or informal, prior to the adoption of the master contract. The master contract with its grievance procedure was adopted after the initiation of this lawsuit, and the teachers did not abandon the lawsuit to follow the grievance procedure but chose instead to amend their complaint. Nor did the school board make any effort to require them

---

[3] Although plaintiffs allege an unfair labor practice in the termination of the contract of plaintiff Gerald Larson, a member of the Federation, despite the board's assigned reason as the elimination of his teaching position due to a reduction of government funding, no claim for his reinstatement was included in the prayer for relief of the amended complaint. As to plaintiff Larson, he was notified of the reason for termination and informed of his right to request a hearing pursuant to § 125.12, subd. 4, and he failed to make such request. Thus, plaintiffs' claim of unfair labor practice is, as the trial court found, without support in this record since there is no evidence that plaintiff Larson's termination was based upon his membership in the Federation of Teachers.

to pursue the grievance procedure, as they might have done by opposing the motion to amend the complaint. We believe that by failing to do so the board has waived whatever right it may have had to insist that the grievance procedure be followed.

If the record clearly indicated that the school board was acting under its authority to respond to a strike, their actions with respect to denial of salary increments may have been justified on that ground. Section 179.64, subd. 2, provides for summary termination of a teacher upon his participation in an illegal strike, and the greater penalty might properly have been considered to include the lesser one of refusing to raise salaries. However, there has been no finding either by the board after hearing or by the trial court, or indeed any allegation that plaintiffs were engaged in a strike, and as a reviewing court we are precluded from considering a justification of the board's action on that ground.

The record reveals only the bare fact that the increase was not granted because of the refusal to teach. The meager record is sufficient, however, for us to decide, as we do, that the board acted within its general discretionary authority in determining that the 1972-1973 salaries be kept at the same level as the 1971-1972 salaries as a penalty for the October 9 absence. Section 123.33, subd. 1, vests responsibility for the care, management, and control of independent school districts in the school boards. Commenting on the general powers of the school boards, we said in Frisk v. Board of Education of City of Duluth, 246 Minn. 366, 381, 75 N. W. 2d 504, 514 (1956):

"* * * A duly constituted school board * * * is a part of the executive department, but when such board operates one of our several public school systems under the general powers given to it, it exercises more than merely administrative functions for it has certain powers of a legislative character and other powers of a quasi-judicial character such as passing upon discharge or demotion and such hearings as it may conduct * * *."

State ex rel. Johnson v. Independent School Dist. No. 810, 260 Minn. 237, 109 N. W. 2d 596 (1961); State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. 544 (1942), overruled in part by Foesch v. Independent School Dist. No. 646, 300 Minn. 478, 223 N. W. 2d 371 (1974); Webster v. Marshall, 270 Minn. 292, 133 N. W. 2d 533 (1965). The school board was justified under the wide discretion afforded it no matter how this act of the teachers is characterized, for it was at the least a contract violation and an act of insubordinate defiance of the school board's determination that school would be held on Columbus Day 1972.

Finally, plaintiffs argue that the action of the board taken at its March 15 meeting of refusing to grant scheduled salary increases for a second year, 1973-1974, constitutes an unreasonable and excessive penalty. With this we agree. The unreasonableness lies not so much in the severity of the penalty, as plaintiffs primarily argue, as in the piecemeal manner in which it was meted out. The contractual violation occurred October 9, 1972. On October 18, the school board was informed by the superintendent that one day's salary would be deducted from plaintiffs' salaries, and the board threatened by motion that tenured teachers would not be rehired. Had this action been carried out, the board would have been required to notify the teacher, stating the grounds for termination and furnishing information of the teacher's right to a hearing under § 125.12, subd. 4. However, the record discloses no further action by the board against the tenured teachers until its special meeting on February 16, 1973, when it decided that plaintiffs would be offered contracts for 1972-1973 holding them at their salary level of 1971-1972. The record reveals that these contracts were sent to plaintiffs on March 6 with a cover letter indicating that the retention at the 1971-1972 salary level was for the sole reason that plaintiffs were willfully absent from school and failed to perform their teaching duties on October 9, 1972. Plaintiffs were requested to sign and return the contracts immediately.

As we have said, we find no abuse of authority by the school board in any of its actions up to this point. However, the school board in a special meeting on March 15 determined to assess an additional penalty against the plaintiffs offered contracts for the 1973-1974 school year, again solely for their willful absence on Columbus Day, by continuing to hold them at the 1971-1972 salary levels for the 1973-1974 school year. This we find to be a second penalty for the single offense, or the final step in a serialized penalty, and unreasonable for that reason.[4]

An examination of labor arbitration cases has been helpful to our decision on this issue. See, International Union of Operating Engineers, Local No. 49, v. City of Minneapolis, 305 Minn. 364, 233 N. W. 2d 748 (1975). In Stauffer Chemical Co. 59 Labor Arb. Rep. 414 (1972), an industrial accident occurred due to the violation of safety rules by two employees. Discipline was administered in the form of reprimands to the employees which became a part of their records. Three weeks later, the employees received notice of a 1-week disciplinary layoff. The arbitrator said (59 Labor Arb. Rep. 416):

"The only question in this case is whether a *second* and *more severe* disciplinary penalty should have been imposed, approximately three weeks subsequent to the first discipline, upon each grievant.

"On this issue, the arbitrator concludes that there was not proper cause to impose additional and more severe penalties. This conclusion is warranted solely on the basis of the principle of prohibition of double jeopardy. This principle is so well known and so well established as not to require specific explanation.

"As already noted, the grievants had been formally summoned

---

[4] Although it is argued that the first penalty was defendant school district's refusal to pay wages for Columbus Day, and that the denials of salary increments for two school years should therefore be considered serialized penalties, we have rejected that argument in our holding that that refusal to pay wages was not a penalty but justified on contractual grounds.

by the supervisor and formally notified that each was being disciplined by issuance of a reprimand which penalty would become a matter of record. *Three weeks later* they received written notice of one-week disciplinary layoffs. There is no doubt whatsoever that the grievants were punished twice for the same offense. Such action was improper."

This importation into labor arbitration from criminal law of the concept of "double jeopardy" or "double punishment" is reviewed in International Harvester Co. 16 Labor Arb. Rep. 616 (1951). See, Stop and Shop, Inc. 46 Labor Arb. Rep. 699 (1966); Hi-Life Packing Co. 41 Labor Arb. Rep. 1083 (1963). By analogy to the double-penalty principle of arbitration decisions, and by more remote analogy to the principle of double jeopardy of the criminal law, we believe that a school board acts unreasonably when it assesses a second penalty for an offense for which it has already imposed one penalty. To approve such a practice would be to render plaintiffs such as these subject to ongoing additional penalties for an indefinite period. What might be a proper penalty if imposed once easily becomes harassment if it is dealt out piecemeal so that the offender never knows when the penalty is complete. Nor do we believe that the master contract provision that the school board may withhold salary increases with proper cause and due notice authorizes the school board to penalize its employees in this unreasonable manner, especially where the act for which the penalty was assessed occurred before the adoption of the master contract. We therefore reverse the trial court on this issue; hold that the plaintiffs who taught during the 1973-1974 school year are entitled to be paid the difference between what they were paid for the 1973-1974 school year and the amount they would have received under the salary schedule for that year had the improper penalty not been imposed; and direct that, after determination by the trial court, judgment for the amount thereof be ordered entered accordingly.

Affirmed in part, reversed in part, and remanded for entry of judgment.