Nicholas C. HELM and Mary B. Helm, Individually, as Joint Owners in Joint Tenancy, and as Parents and Natural Guardians of Infants, Mollie Helm, Mark Helm, and Thomas Helm, et al., Appellants,

v.

EL REHBEIN & SON, INC., defendant and third party plaintiff, Respondent,

v.

Dale HUBER and Daryl Jones, d. b. a. Huber & Jones, third party defendants, Respondents.

No. 46059.

Supreme Court of Minnesota.

Sept. 2, 1977.

Robins, Davis & Lyons, Judy A. Rogosheske, Dale I. Larson and Robert M. Wattson, Minneapolis, for appellants.

Weaver, Talle & Herrick, and Virgil C. Herrick, Fridley, Popham, Haik, Schnobrich, Kaufman & Doty, Wayne G. Popham and Allen Hinderaker, Minneapolis, for El Rehbein & Son, Inc.

Harvey Skaar, Minneapolis, for respondents.

Heard before TODD, MacLAUGHLIN, and YETKA, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, Justice.

Plaintiffs, Nicholas C. Helm and Mary B. Helm, commenced this action for damages for loss of life, personal injuries, and property destruction as a result of a fire which destroyed their residence and caused the deaths of two of their five minor children. The Helms alleged negligence, breach of implied warranties, and strict liability in tort against defendant, El Rehbein and Son, Inc. (Rehbein), the contractor which constructed the house, and against defendants, Dale Huber and Daryl Jones, d. b. a. Huber & Jones, who had been hired by Rehbein to install the heating system therein. The case was tried to a jury which found no negligence by any of the parties. Plaintiffs appeal from the order for judgment[1] and from the denial of their motion for a new trial. We affirm.

In 1963, Rehbein contracted to construct a split-level house for Wilbur and Donna Wiedemeyer in the village of Circle Pines. Rehbein subcontracted with Huber & Jones, a heating and air conditioning company, for the installation of a hydronic heating system in the Wiedemeyer house. In 1966, the Wiedemeyers sold the house to the Helms who occupied it until its destruction by fire in the early morning hours of February 28, 1970.

During the evening before the fire, the Helms visited with friends in the family room located on the lower level of the house. A fire had burned in the fireplace but was reduced to embers by the time the Helms retired at about 1 a. m. At approximately 2 a. m., the Helms were awakened by a whooshing sound and found their bedroom on the upper level filled with smoke and saw flames shooting up the stairway from the lower level.

The Helms rushed outside and Nicholas Helm broke windows on the lower-level bedrooms, rescuing two of his sons and a neighbor's child who was spending the night. Helm found a ladder and rescued his daughter from a second level bedroom although she was severely burned. Helm, however, could not save his two youngest sons who perished in the fire, and he sustained serious burns during his heroic rescue efforts.

The Helms brought this action against Rehbein and against Huber & Jones alleging that the vent connector leading from the furnace to the chimney had been install-

---

1. Although Rule 103.03(a), Rules of Civil Appellate Procedure, provides that an appeal be taken from the judgment, plaintiffs' notice of appeal states that it was taken from "the Order for Judgment Pursuant to Special Verdict entered herein by the above-named District Court on the ninth day of April, 1975." Since judgment had been entered before the notice of appeal was filed, the notice was not premature but only technically deficient. *Skeim v. Independent School Dist. No. 115*, 305 Minn. 464, 234 N.W.2d 806 (1975). Mere formal defects or clerical errors should be disregarded where they are not misleading and do not prejudice the respondents in any way, and this court, in its discretion, may consider the matter on its merits. Rule 105, Rules of Civil Appellate Procedure; *Brekken v. Holien*, 289 Minn. 95, 182 N.W.2d 717 (1970); *Village of Aurora v. Commissioner of Taxation*, 217 Minn. 64, 14 N.W.2d 292 (1944).

ed too close to the combustible wood studs on an adjacent wall, in violation of state and local building codes, and that this had caused the fire. During the trial, which lasted more than 1 month, plaintiffs relied primarily on their expert witness, Professor Rolf Jensen, chairman of the Department of Fire Protection and Safety at the Illinois Institute of Technology, who had examined the premises 16 days after the fire.

Jensen's testimony was based on his visual examination of the premises and not on tests or analyses since the wall in question had been completely consumed by the fire. Jensen testified that in his opinion the vent connector from the furnace had been in direct contact with or in close proximity to the stud wall which had separated the utility room from the family room on the lower level. Jensen thought the fire had originated in this area because, in his opinion, the studs had carbonized as a result of their continual exposure to the heat of the vent connector. According to Jensen, the exposure of wood to heat over a long period of time can cause the transformation of wood to pyrophoric carbon which ignites at a lower temperature than uncarbonized wood.

Defendants presented extensive testimony to rebut Jensen's theory that the vent connector's proximity to the stud wall had caused the formation of pyrophoric carbon. Although Jensen testified that the color of wood will change during carbonization, defendants produced witnesses who stated that they had never noticed any change in the color of the wood studs. Further, the Helms and Mrs. Wiedemeyer, the original owner of the house, testified that they had never noticed the vent connector touching the wall.

Defendants also offered evidence to demonstrate that the furnace installation had been approved by the village building inspectors at the time of the construction of the house and that the clearance between the stud wall and the vent connector had been in compliance with the 6-inch requirement of the building code then in effect. One of the building inspectors testified that he had personally inspected the house and

could recall measuring the clearance which was at least 6 inches.

To refute Jensen's opinion as to the source of the fire, defendants presented numerous witnesses to testify as to other possible causes. Thomas Carson, a Minneapolis Gas Company utilization engineer in charge of the laboratory for testing heating systems, stated that the Helm fire was not pyrophoric in origin. Carson testified that even if the wood studs had become carbonized, the burning logs in the Helms' lower level fireplace during the evening of the fire would have created a downdraft and kept the vent connector cold, making the ignition of the studs unlikely.

Edward McAllister, assistant state fire marshal, testified that he had investigated the Helm fire on five different occasions at the request of the Circle Pines' fire inspector. Although McAllister concluded that the fire was of undetermined origin, he thought it had originated between the utility room and the den, as demonstrated by the burn pattern, and not between the utility room and the family room, as Jensen had testified. McAllister said that of the 900 fires he had personally investigated during the course of his employment, pyrophoric carbon had never been found to be the actual cause of a fire.

John Carroll and Phillip Anderson, professional engineers, appeared as expert witnesses for defendants. Carroll and Anderson disagreed with Jensen's theory that the fire had started on the wall next to the vent connector and both witnesses stated that they thought the fire had begun on the wall between the utility room and the den. Although neither witness was able to determine the exact cause of the fire, Carroll and Anderson considered an unvented dryer and its gas piping, the furnace itself, and the electrical distribution box as potential causes.

Archie K. McKenzie, Circle Pines fire marshal, testified that he had been on duty as a fireman the night of the Helm fire and that the electrical box was white hot. He also testified that he had investigated the premises on three subsequent occasions and

observed that the gas dryer had been placed too close to the utility room wall, in violation of the code requirement.

During cross-examination, plaintiff Nicholas Helm was asked about various modifications he had made to the house after its purchase from the Wiedemeyers. Helm admitted that he had removed an electric water pump after city water had been installed and had disconnected the wiring himself, changing the electric line from 220 volts to 110 volts to be used as a source for light in the former pump room. This modification of the electrical system was made without a building permit and without inspection by the village authorities. Helm was also questioned about his installation of gas piping without a permit and about his failure to support this gas line with a sufficient number of hangers as required by the building code. Further, Helm testified that he had not externally vented the clothes dryer but had used a nylon stocking to catch the lint, which both plaintiffs' and defendants' experts acknowledged could be hazardous.

Defendants also offered testimony that a gas line had been run through the clean-out gate to a gas log in the upper level fireplace. Although this was conceded to be in violation of the building code, there was no determination as to who had installed this piping or when it had been installed.

This appeal followed the jury's finding of no negligence on the part of any of the parties.

1. Although plaintiffs concede that defendants had a right to establish other possible causes of the fire, they contend that certain questions elicited testimony by plaintiff Nicholas Helm that he had violated the building code in performing work in his house, and that this evidence was prejudicial to plaintiffs' case. Plaintiffs argue that evidence of Helm's modification of the electrical system without a permit or inspection, installation of gas piping to the

dryer without a permit or a sufficient number of hangers, and placement of the unvented dryer too close to the utility room wall was improperly admitted by the trial court.

Plaintiffs submit that this evidence of their violation of certain provisions of the building code may have been considered by the jury as evidence of plaintiffs' negligence and that the questions and answers which referred to plaintiffs' building code violations should have been excluded.[2]

Defendants, however, did not offer this evidence for the purpose of showing the comparative negligence of plaintiffs but rather to rebut the opinion of plaintiffs' expert witnesses who testified that the acts of defendants were the sole proximate cause of the fire. This evidence was properly admitted by the trial court as relevant and material to the issue of proximate causation by showing other possible alternative explanations as to the cause of the fire.

We explained in *Boland v. Morrill*, 270 Minn. 86, 98, 132 N.W.2d 711, 719 (1965):

> " * * * Relevancy is largely a matter of logic. * * * If the offered evidence permits an inference to be drawn that will justify a desired finding of fact, it is relevant. Reduced to simple terms, any evidence is relevant which logically tends to prove *or disprove* a material fact in issue * * *." (Emphasis supplied.)

Evidence that the gas dryer was installed too close to the utility room wall and without an exterior vent, that an insufficient number of hangers supported the gas line, and that permits were not obtained nor inspection secured for installation of gas piping or electrical work was relevant because these acts could have created conditions which caused the fire, and could disprove the theory of proximate causation advanced by plaintiffs' expert.

Further, since plaintiffs had presented evidence on the specific issue of

---

**2.** The record fails to disclose any objections by plaintiffs to the questions they now allege to be prejudicial. Where allegedly improper or prejudicial evidence has been admitted without ob-

jection, a party may not object to its admissibility for the first time in a motion for a new trial or on appeal. *Poppler v. O'Connor*, 306 Minn. 539, 235 N.W.2d 617 (1975).

causation, defendants' evidence to the contrary was clearly admissible on the same issue. *Albertson v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 242 Minn. 50, 58, 64 N.W.2d 175, 181 (1954). Because we have held that rulings on the admissibility of evidence are best addressed to the sound discretion of the trial court, the trial court's determination that this evidence was without prejudice must control. *E. C. I. Corp. v. G. G. C. Co.*, 306 Minn. 433, 237 N.W.2d 627 (1976).

■ 2. The trial court instructed the jury that evidence of plaintiffs' alleged building code violations was limited to the issue of proximate causation and stated in pertinent part:

"You are instructed that the violations claimed by the Defendants on the part of Plaintiff, Nicholas Helm, are not to be considered by you as negligence causing this fire for there is no proof of such causation in the evidence in this case. You are to consider them only as they may bear on the Plaintiffs' obligation to prove negligence and to prove causation on the part of the Defendants by a preponderance of the evidence."

Although plaintiffs allege that this cautionary instruction failed to convey to the jury the limited purpose for which the evidence of plaintiffs' building code violations was admitted, plaintiffs concurred in the corrective instructions and did not object to them before the jury retired. Rule 51, Rules of Civil Procedure. In any event, we find no error in the instruction.

■ 3. After a careful review of the record, it is clear that the verdict was amply supported by the evidence and that plaintiffs were unable to sustain their burden of proof that defendants were negligent or that the alleged negligence was the direct cause of plaintiffs' damages.

Affirmed.