MARSHALL COUNTY CENTRAL EDUCATION ASSOCIATION and Patricia Dunning, Appellants,

v.

INDEPENDENT SCHOOL DISTRICT NO. 441 and R. Gene Busch, Respondents.

No. C3–84–759.

Court of Appeals of Minnesota.

Feb. 19, 1985.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Eric R. Miller, Michael J. Vanselow, St. Paul, for appellants.

Dickel, Johannson, Wall, Taylor & Rust, Lee E. Wall, Crookston, for respondents.

Knutson, Flynn & Hetland, P.A., Joseph E. Flynn, Frederic W. Knaak, for amicus curiae Minnesota School Boards Ass'n.

Heard, considered, and decided by FOLEY, P.J., and LANSING and NIERENGARTEN, JJ.

**OPINION**

NIERENGARTEN, Judge.

Appellants Patricia Dunning and the Marshall County Central Education Association (MCCEA) appeal from a judgment entered February 1, 1984. The trial court found respondent Independent School District No. 441's (District) decision not to renew Dunning's contract a valid exercise of the School Board's authority pursuant to Minn.Stat. § 125.12, subd. 3 (1982) and not a violation of the Public Employment Labor Relations Act (PELRA). We reverse and remand.

**FACTS**

Patricia Dunning was hired by Independent School District No. 441 on August 17, 1982, as a one-half time art instructor for the 1982–83 school year. She was not a

tenured teacher as defined by Minn.Stat. § 125.12, subd. 3 (1982). Her typical work day was to begin at 11:30 a.m. and end at 3:45 p.m. for a term of 180 days. Dunning would have become tenured had her contract been renewed for the 1983–84 school year.

In a letter dated February 17, 1983, Dunning requested that the District reconsider her contract for the 1983–84 school year. Dunning, in being assigned 5 art classes, felt she was working more than half of what the full-time teachers were working. She conceded, however, that nothing could be done regarding the 1982–83 term because she agreed to the contract. The fifth class was actually an independent study program and was dropped as a result of her letter. Dunning agreed that thereafter her employment contract was consistent with the agreement made between herself and superintendent Busch.

Sometime prior to April 28, Dunning again expressed concern over her schedule and salary to her immediate supervisor David Kragness, the principal at Central High School where Dunning was employed. Kragness advised Dunning to assert her complaint pursuant to the grievance procedure adopted by the MCCEA and the District in a master collective bargaining agreement.

On April 23, 1983, Dunning filed a grievance with the school district apparently for the purpose of renegotiating her contract for the 1983–84 school year. She alleged she was not allowed sufficient preparation time and that her salary was inappropriate. On April 29, Kragness denied Dunning's grievance on the basis of a letter written by Gene Busch, the school superintendent for the District, dated February 24, 1983. This letter provided in part:

> Please note that you are assigned 4 periods of Art which is 190 minutes and 30 minutes of prep time for a total of *220 minutes* of duty time. This is compared to a regular teacher who is available for assignment from 8:00 a.m. to 3:45 p.m. or 7 hours 45 minutes or 465 minutes. With 20 minutes deducted for noon hour,

this leaves 445 minutes of duty time for a full time teacher. One half of this would normally be *222 minutes* of assigned duty time.

(Emphasis in original).

The grievance was then submitted to Gene Busch as required by Step 2 of the grievance procedure. Because of an uncertainty regarding the applicable school year to which the grievance pertained, the grievance was withdrawn and never resubmitted.

On May 5, 1983, Busch submitted several options regarding hours and salary for the art program for the 1983–84 school year. On May 26, Dunning informed the superintendent that she would accept the 1982–83 contract terms for 1983–84 but that she could discuss nothing further with the superintendent or principal unless her representative was present. Later that day, Busch recommended to the School Board that Dunning's contract not be renewed. On May 26, the school board adopted a resolution to terminate Dunning's contract at the end of the 1982–83 school year and not renew it because of her "lack of cooperation."

It is not disputed that Dunning performed all the terms of her 1982–83 teaching contract. In fact, Kragness, the principal and Dunning's immediate supervisor, commended her for her teaching proficiency.

## ISSUES

Was Dunning's contract not renewed because of her exercise of a right granted under the:

(1) PELRA; or

(2) First Amendment.

## ANALYSIS

### I

 Dunning argues her nonrenewal constituted an unfair labor practice. As a probationary teacher, Dunning's contract is terminable as the board sees fit. Minn. Stat. § 125.12, subd. 3 (1982).

We have expressed our reluctance to interfere, so long as the statutory procedures are followed, with a school board's termination of a probationary teacher in *Pearson v. Independent School Dist. No. 716*, 290 Minn. 400, 188 N.W.2d 776 (1971), where we construed the statute as vesting unlimited discretion in the board with respect to renewal of a probationary teacher's contract.

*Skeim v. Independent School District No. 115*, 305 Minn. 464, 473, 234 N.W.2d 806, 812 (1975). Notwithstanding this unlimited discretion held by the board, the Minnesota Public Employment Labor Relations Act (PELRA) provides a remedy in certain situations.

The PELRA, Minn.Stat. §§ 179.61–76 (1982 and Supp.1983)[1], establishes "special rights, responsibilities, procedures and limitations regarding public employment relationships * * * for the protection of the rights of the public employee, the public employer and the public at large." Minn. Stat. § 179.61(3) (1982). Section 179.65, subd. 1 (1982) provides:

Nothing contained in sections 179.61 to 179.76 shall be construed to limit, impair or affect the right of any public employee or his representative to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment * * *.

*Id.* In *Ekstedt v. Village of New Hope*, 292 Minn. 152, 193 N.W.2d 821 (1972), the supreme court interpreted Minn.Stat. § 179.52 (1969), the predecessor to section 179.65, subd. 1, to mean that a public employee may not be terminated for submitting a grievance. The issue, therefore, is whether the board terminated Dunning for submitting a grievance.

▇ The court in *Ekstedt* adopted a liberal interpretation of the term "grievance," stating:

A liberal and broad construction of the term "grievance" as used in collective bargaining agreements should be given in the interest of encouraging the use of machinery which has been set up for peaceful settlement of disputes. * * * It appears reasonable to conclude that the Minnesota statutory reference relates to some complaint related to terms or conditions of employment.

*Ekstedt*, 292 Minn. at 161, 193 N.W.2d at 827. The PELRA specifically defines a grievance as "a dispute or disagreement as to the interpretation or application of any term or terms of any contract * * *." Minn.Stat. § 179.70, subd. 6 (1982) (recodified as Minn.Stat. § 179A.21, subd. 1 (1984)). Even if an employee is mistaken or in error with respect to allegations in a grievance, an employee cannot be discharged for submission of a grievance. *Ekstedt*, 292 Minn. at 161–62, 193 N.W.2d at 827.

The board argues Dunning's nonrenewal was caused by her "lack of cooperation" and inability to resolve problems concerning the terms and conditions of her future employment. The board also argues the decision not to renew is exempt from judicial review by virtue of section 125.12, subd. 3.

▇ The differences between Dunning and the school board arose out of a series of negotiations regarding Dunning's contract for the school year 1983–84 and not 1982–83. On February 17, 1983, Dunning wrote her letter to the school board raising questions relating to the anticipated 1983–84 contract. The letter stated, "I say nothing about the position for this year [1982–83], for I have agreed to it * * *. I do feel, however, that this arrangement is unfair and unprofessional. I do hope that you will consider the fairness of the situation and will re-consider the arrangement for next year." On April 23, Dunning filed her grievance, which was delivered to Busch as required by step 2 of the grievance procedure. Although the grievance was withdrawn and never resubmitted, the

---

1. The current version is contained in Minn.Stat. ch. 179A (1984) which replaces §§ 179.61 to 179.76 (1982). *See* 1984 Minn.Laws ch. 462, §§ 1–28.

failure to resubmit it did not terminate the grievance or the negotiations of the same.

As stated above, a grievance "relates to some complaint related to terms or conditions of employment." *Ekstedt*, 292 Minn. at 161, 193 N.W.2d at 827. The negotiation period between May 4 and May 26 (the date on which the board met regarding Dunning's contract) arose directly from Dunning's grievance and cannot be classified as separate and independent. During this period, each party presented a number of options with respect to a half-time position for the 1983–84 school year. The board's decision not to renew Dunning's contract arose from events which occurred during the negotiation period. Everything centered around the issues initially raised in Dunning's grievance. Therefore, the nonrenewal of Dunning's contract was based on the filing of a grievance.

The board's claim of lack of cooperation was a mere pretext to terminate Dunning for exercising her statutory right to assert a grievance under PELRA. Accordingly, the board's decision is not reviewable under the standards set forth in Minn.Stat. § 125.12, subd. 3, which provides that a contract with a probationary teacher may or may not be renewed as the board sees fit. Dunning's dismissal violated a right granted under the PELRA.

## II

Dunning's first amendment claim need not be addressed in light of our resolution of the above issue.

## DECISION

The school district's decision not to renew Dunning's contract was based on her submitting a grievance and was, therefore, in violation of Minn.Stat. § 179.65, subd. 1 (1982). Accordingly, we order the district to reinstate Dunning and remand to the trial court the issue of back pay.

Reversed and remanded.