[No. 6592.]

## LILLEY v. TUTTLE.

1. ARBITRATIONS—*Parol, Submission and Award*—Notwithstanding the provisions of the code (Rev. Code, c. 27), parties in difference may agree by word of mouth to submit the controversy to arbitration. The code, when complied with, gives to the award of arbitrators the effect of a judgment, but does not take away the common law right to arbitrate by parol—(125).

2. ——*Statute of Frauds*—As a general rule a parol submission to arbitration is valid. Such a submission to arbitration of a controversy as to the number of bushels of wheat which by due care in threshing might have been obtained from a certain field, is not prohibited by the statute of frauds, though the amount in controversy largely exceeds $50—(127).

And the award may be in parol—(127).

3. ——*Oath of Arbitrators*—Where the submission is by parol the arbitrators may, in the absence of a stipulation to the contrary, act without taking any oath—(128).

4. ——*Irregularity in Proceedings of Arbitrators*—That the arbitrators proceeded contrary to law, e. g., that the advisary party was present with them, in violation of a stipulation, is no ground to exclude evidence of the submission and award—(128).

5. TRIAL—*Reserving Questions for Review*—Where the trial court has once ruled upon the admissibility of evidence and an exception has been reserved, it is not necessary or proper to renew the contention by an offer of other evidence, or by praying instructions—(129).

6. ——*Duty of Counsel*—It is the duty of counsel to call the attention of the trial court to any decision of this court, or the court of appeals, directly upon the question involved—(126).

*Appeal from Saguache District Court.*—HON. HENRY HUNTER, Judge.

Mr. JAMES P. VEERKAMP for appellant.

Mr. CHARLES M. CORLETT and Mr. GEORGE M. CORLETT for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

On the 2nd day of October, 1907, the appellant and appellee entered into a written contract involving the exchange of certain properties. The appellant, Lilley, was the owner of a lease on one hundred sixty acres of school land, which he agreed to exchange for certain property belonging to the appellee Tuttle; Lilley also agreed to pay Mr. Tuttle $2,400 in money. The school land was mostly in wheat then in shock, which crop was to go to Tuttle, who, immediately after the execution of the contract, entered into possession, and later threshed the wheat. The provision in the contract, out of which this controversy arises, reads:

"Said first party agrees to pay said second party 75 cents per bushel for each and every bushel less than 4,000 bushels to be realized on the Southeast quarter of Section 22, Township 41, Range 7."

This was the school land exchanged. This action was brought by the appellee Tuttle. In his complaint he sets up this contract and alleges that this crop of wheat was in the aggregate of twenty-two hundred sixty-eight bushels, and no more, making it short of the guarantee in the aggregate of seventeen hundred thirty-two bushels, which, at seventy-five cents per bushel, amounts to $1,299.00, for which he seeks to recover judgment.

The defendant Lilley admitted the execution of the contract, but alleges, that while the plaintiff was in possession of the wheat he carelessly and negligently failed to properly and timely husband, care for and thresh the same, but carelessly and negligently allowed it to remain in shock on said land an undue length of time; that by reason of his negligence and carelessness, much of the grain was shattered from the straw, fell upon the ground, and was thus wasted; that the plaintiff caused the wheat to be threshed in such a gross, careless, and negligent

manner, that large quantities of the grain were blown into the straw, and thus much of it was lost; that had plaintiff used ordinary diligence in caring for and threshing the wheat, he would have reasonably realized thirty-five hundred bushels therefrom, but because of his negligence and carelessness as aforesaid, there were at least twelve hundred bushels of the wheat lost and wasted.

The defendant further alleged, that, after the wheat was threshed, the plaintiff, well knowing that large quantities of it had been lost and wasted, for the reasons aforesaid, and knowing that he would have realized much more had he used ordinary care and diligence to husband and thresh the same, agreed with the defendant, for the purpose of ascertaining the amount of wheat that had been thus lost by reason of plaintiff's negligence, that he and defendant each select a man, and that the two men so selected by them select a third man, and that the three men so selected be and constitute a board of arbitrators; that they visit and examine the field where said wheat had been in shock, and examine the straw from which said wheat was threshed, and ascertain as nearly as possible the amount of wheat that had been lost and wasted through the plaintiff's negligence, etc., and that the defendant then pay the plaintiff whatever difference, if any, between the amount of wheat said board of arbitrators might agree that said plaintiff would have realized had he properly husbanded and threshed same, and the four thousand bushels named in the contract; that in pursuance of said agreement, the defendant selected one man, the plaintiff selected one man, and the two so selected did select a third man, and the three did examine the field and straw, considered same and then arrived at the unanimous conclusion that but for the careless and negligent manner in which the said wheat had been cared for, hus-

banded and threshed, the said plaintiff would have real-
ized therefrom thirty-three hundred fifty bushels of
wheat, and that they notified both the plaintiff and de-
fendant of their conclusions aforesaid.

The defendant further alleged that said board acted
fairly and honestly, and that the conclusion reached by
them as to the amount of wheat plaintiff would have
realized, had it been properly cared for and threshed, is
correct, and that plaintiff, but for his own carelessness
and negligence, as aforesaid, would have realized thirty-
three hundred fifty bushels of wheat; that as soon as the
board made known to the defendant and plaintiff the re-
sult of their deliberation, the defendant offered to pay
the plaintiff $487.50, the amount at seventy-five cents per
bushel, being the difference between thirty-three hundred
and fifty bushels and four thousand bushels; that he is
now, and at all times since has been, ready to pay him
that amount and is willing that judgment be given
against him for that amount, etc.

A replication to this answer admitted that there was
an attempt to arbitrate and a pretended award, but that
said submission and award was wholly void, for the
reasons:

"(a) It is a contract involving more than $50.00
and not in writing; therefore void under the statute of
frauds and no note or memorandum was made at the
time by the party to be charged.

(b) The arbitrators proceeded without having
first taken an oath to perform their duties fairly and im-
partially, or without having taken any oath whatever or
at all.

(c) They proceeded contrary to law and received
the opinions of persons not sworn or under oath, and in
the absence of this plaintiff."

Further facts were set forth in the replication why the arbitration was not valid. A trial by jury resulted in a verdict for the plaintiff in the sum of $1,041; the defendant brings the case here by appeal.

When the plaintiff rested his case he was called as a witness for cross-examination under the statute, and the fact of this arbitration was sought to be shown by him, also that the defendant had offered to pay him the amount still due as found by the board of arbitrators. Upon objection to this line of evidence, counsel for the defendant was asked by the court, "Was there any written award, or decision?" Counsel replied, "There was no written award." The court then said, "I don't believe that this arbitration is binding, or a legal one, or that evidence of it as set forth in the pleadings should be heard." To this ruling of the court the defendant then and there excepted. Counsel then asked, "May I ask these questions for the purpose of finding out the quality of the wheat there?" The court replied, "Oh, yes." The judge gave no further explanation of his reasons for the rejection of this testimony. It was evidently based upon the theory that the provisions of chapter 27, Revised Code, 1908, concerning arbitration, were not complied with, and that the right to enter into a common law arbitration does not exist in this state, and there could be no binding arbitration and award, unless the code provisions were complied with. Whatever may have been the reasons, the exclusion of this line of evidence was error. The pleadings, if sustained, would have made out a case of common law arbitration and award.

This identical question was considered and thoroughly discussed in the case of *McClelland v. Hammond,* 12 Colo. App. 82, wherein it was held, that the provisions of our Code were not intended to abolish and do not abol-

ish common law arbitration, but their purpose, when complied with, was to give the award of the arbitrators the effect of a judgment at law enforceable in like manner as a judgment; that an award under common law arbitration has not the effect of a judgment, and is not self-enforcing; that both forms of procedure exist, as neither conflicts with the other, and that an award under a common law arbitration may be made the basis of an action to carry its terms into effect, or may be pleaded in bar of an action upon the same subject-matter.    For which reasons, we conclude that the defendant had the right to plead and prove, if he could, the submission of the matter in dispute to arbitrators, and if a valid award in defendant's favor had been shown according to the common law rules, the plaintiff was bound thereby.

The case of *McClelland v. Hammond, supra,* appears to have been overlooked by counsel on both sides; it is not cited in the briefs of either, and evidently was not called to the attention of the trial court, otherwise the ruling would probably have been different.    In the brief time usually taken in our *nisi prius* courts to pass upon such questions, it is not unnatural that a former decision might be overlooked.    It is the duty of counsel, who usually have more time to investigate than the court, to see that the court's attention is called to any decision of this court or of the court of appeals upon the direct questions involved.

Counsel for the appellee contend that the ruling was correct, for several reasons:

First.    That the award, not being in writing, was void under the statute of frauds, it being a contract involving more than $50.00.

Second.    That the arbitrators proceeded without having first taken an oath.

Third. That they proceeded contrary to law and in the absence of the plaintiff and that the defendant agreed that he would not be present, that in violation of this agreement he was present at the time the award was agreed upon.

Fourth. That the arbitrators considered questions that were not submitted to them.

As to the first, the agreement to arbitrate and the arbitration did not involve a contract for the sale of any goods, chattels or thing in action for the price of $50 or more, as provided for by our statute. The contract for the exchange, including this wheat crop, was in writing, and, if it had not been, so far as the plaintiff was concerned, he eliminated the question by taking possession and appropriating the entire crop to his own use. The matter in dispute was the negligence of the plaintiff, which it is alleged was the cause of the loss. The defendant had a claim for damages against him through his actions in this matter. This claim for damages was the question for arbitration, and if the defendant's position is correct, the plaintiff recognized this by agreeing to enter into an arbitration to ascertain the amount of this damage. The method agreed upon whereby it was to be ascertained, was merely an incident in having it so fixed. This method allowed a board of arbitrators to decide the difference between the amount of the crop actually realized and the amount which would have been realized had it been properly cared for, etc.; under these conditions, if proven, as alleged, we do not think it within the prohibition of our statute of frauds. As a general rule, a parol submission to arbitrate is valid and so is a parol award as to matters submitted as a common law arbitration.—*Smith v. Douglass,* 16 Ill. 34; *Phelps v. Dolan et al.,* 75 Ill. 90; *Kelley et al. v. Adams et al.,* 120 Ind. 340;

*Winne v. Elderkin,* 2 P. (Wis.) 248; Vol. 2, Am. & Eng.
Enc. of Law (2 Ed.), 541.

The contention that the arbitrators proceeded with-
out having first taken an oath, is not sustained by the
authorities as to a common law arbitration.

In Vol. 3, Cyclopedia of Law and Procedure, at page
622, it is said:

"The authority to act as arbitrator under a submis-
sion at common law does not require that the arbitrators
should be sworn, unless it is stipulated in the agreement
to arbitrate that such oath shall be administered."

In Vol. 2, Am. & Eng. Enc. of Law (2 Ed.), at
page 639, it is said: "An arbitrator need not be sworn
at the common law." This rule is still recognized.—*In-
surance Company v. Benjamin,* 113 Ga. 1088. ·

The contentions that they proceeded contrary to law
and that the appellant was present when he agreed not to
be, are not properly here for determination; if sufficient
to defeat the award, they were questions for proof in re-
buttal and were not reasons, in the first instance, why the
evidence concerning the arbitration should not have been
admitted.   Likewise, this pertains to the contention that
the arbitrators considered questions that were not sub-
mitted to them.

Counsel make the further contention that the ques-
tion of arbitration was fully submitted by the evidence;
that if the defendant relied upon the arbitration he should
have offered instructions, and upon their refusal, taken
proper exceptions; that as no special instructions were
asked as to the law question involved in the arbitration,
it is not proper to raise it here.

While it is true that considerable evidence was given
by the three men who it is alleged constituted this board
of arbitrators, the most of it could have been offered for

the purpose of ascertaining the amount and condition of the crop at the time these gentlemen examined it, as arbitrators. The same object could apply to this testimony as that of Mr. Tuttle, when counsel stated, "May I ask these questions for the purpose of finding out the quality of the wheat there?" Under these circumstances, and the judge having stated his position concerning any evidence to be offered to sustain the arbitration, and proper exceptions being duly preserved, it would have been presumptuous upon behalf of the defendant's counsel to have offered instructions concerning the validity of the arbitration when the court had previously held that it was improper to offer evidence to sustain its validity, and when thereafter the first evidence offered pertaining to it was admitted for the purposes of showing the condition of the crop only, and the greater portion of the remainder following was competent to show the conditions, loss, etc., and was evidently offered for that purpose. Counsel having once ascertained the position and ruling of the court upon the question, it was not proper or necessary to again renew the same contention by offering other evidence pertaining to it, or instructions upon the question.

It is not to be presumed, that because some of the testimony thereafter offered pertained to this arbitration, that all the evidence the defendant desired to offer upon the question was submitted. The judge having stated his position pertaining to it, the defendant was justified in relying upon this position. It was his duty, after reserving his exceptions, to submit to the ruling of the court, and it is not to be presumed, had the ruling of the trial court been otherwise, that the defendant would not have offered other evidence upon the subject of the arbitration.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial in harmony with the views herein expressed.                .                *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT concur.