TOWNSHIP OF GAINES v CARLSON, HOHLOCH, MITCHELL &
PIOTROWSKI, INC.

1. TOWNS—TOWNSHIPS—SEWER CONSTRUCTION CONTRACTS—FINANC-
    ING—STATUTES.

    A township is empowered by statute to enter into a contract for
    the construction of a sewer system and although the statute
    authorizes issuance of self-liquidating bonds to finance the
    construction, the issuance of such bonds is not made the
    exclusive means of financing (MCLA 141.101 *et seq.;* MSA
    5.2731 *et seq.*).

2. ARBITRATION AND AWARD—COMMON-LAW ARBITRATION—STATUTORY
    ARBITRATION—STATUTES.

    Common-law arbitration agreements can be revoked or repudi-
    ated at will by a party at any time prior to announcement of
    the award; however, statutory arbitration is irrevocable with-
    out consent of the other party (MCLA 600.5001 *et seq.;* MSA
    27A.5001 *et seq.*).

3. ARBITRATION AND AWARD—CONTRACTS—STATUTORY ARBITRATION—
    INTENT OF PARTIES—LANGUAGE OF CONTRACT—REPUDIATION OF
    ARBITRATION.

    Parties to a contract must clearly express in the contract their
    intent to invoke statutory arbitration, which intent should be
    expressed in language providing for entry of judgment upon an
    award by any court having jurisdiction; where the language of
    a contract clearly satisfies this requirement a plaintiff does not
    possess the power to repudiate the arbitration agreement at
    will.

4. ARBITRATION AND AWARD—RELIEF GRANTED—GROUNDS FOR VACA-
    TION OF AWARD—COURT RULES.

    The fact that the relief granted by an arbitration award is such

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 494.
[2] 5 Am Jur 2d, Arbitration and Award §§ 36–40, 44.
[3] 5 Am Jur 2d, Arbitration and Award § 14.
[4] 5 Am Jur 2d, Arbitration and Award § 90.

that it could not or would not be granted by a court of law or equity is not grounds for vacating or refusing to confirm the award; therefore, an arbitrator who interpreted a contract provision calling for payment of "terminal expense and including a reasonable profit" to include interest and attorney fees should not be held to have exceeded his powers (GCR 1963, 769.9[1]).

Appeal from Genesee, Philip C. Elliott, J. Submitted October 5, 1977, at Lansing. (Docket No. 29751.) Decided November 9, 1977. Leave to appeal denied, 402 Mich —.

Complaint by the Township of Gaines against Carlson, Hohloch, Mitchell and Piotrowski, Inc., to enjoin defendant from proceeding with arbitration invoked by defendant pursuant to a contract provision and for a declaratory judgment that the dispute was not arbitrable. Injunction denied, and the matter proceeded to arbitration. An award was made to defendant, and the circuit court entered a judgment confirming the award. Plaintiff appeals. Affirmed.

*Lattie, Hamilton, Anastor & Austin,* for plaintiff.

*Draper, Daniel, Ruhala & Seymour, P. C.,* for defendant.

Before: D. C. RILEY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

PER CURIAM. Plaintiff, Township of Gaines, appeals as of right from a judgment entered by the Genesee County Circuit Court on July 19, 1976. The judgment confirmed an arbitration award made pursuant to a contract executed between plaintiff and defendant, an engineering firm.[1]

On June 12, 1969, the parties entered into a

---

[1] Carlson, Hohloch, Mitchell and Piotrowski, Inc.

contract in which defendant was to supply engineering services for the construction of a sewer system plaintiff desired to build.

The contract provided that defendant 1) prepare a feasibility study for a lump sum payment of $1,000, 2) prepare construction plans and specifications, and 3) supervise construction and prepare drawings. Defendant was to be paid for the second and third phases of its work on the basis of a defined percentage of the construction costs of the project.

The contract also contained the following provisions:

"E. In case the final plans and specifications are completed and, for any reason, construction is not undertaken, fees will be based on the bid price of the lowest qualified bidder or if bids are not taken, on the ENGINEER'S final cost estimate.

"F. If any work is abandoned or suspended the ENGINEER shall be paid for services performed on account of it prior to receipt of written notice from the OWNER of such abandonment or suspension, together with any terminal expense and including a reasonable profit.

* * *

"C. Any controversy or claim arising out of or relating to this content [sic] or breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof."

The defendant worked on the project from 1969 until late in 1972. In September of 1972 the project was placed on the ballot for the people of Gaines Township to vote in a referendum. The referendum failed and all work on the project had to terminate.

Defendant then sent plaintiff a bill for services

rendered and received no reply. Defendant continued to bill plaintiff with no success over the next three years.

On January 24, 1975, defendant instituted proceedings to settle the matter by arbitration, pursuant to article III of the contract. Plaintiff refused to submit to the arbitration proceedings claiming that the contract was void in that the township had no authority to enter into such an agreement.

The arbitration proceedings resulted in an award of $81,303 to the defendant. Defendant subsequently moved to confirm the award in circuit court pursuant to the terms of the contract.[2]

The circuit court ruled that the plaintiff had entered into a valid contract with the defendant, and confirmed the arbitration award.

Plaintiff appeals contending that the contract is void in that the township had no authority to enter into such an agreement.

Several statutes have been enacted which empower a township to enter into a contract for the construction of a sewer system.[3]

Plaintiff refers us to MCLA 46.171 *et seq.;* MSA 5.2767(1) *et seq.,* claiming the contract was to be based on this legislation, and that the statutory requirements were not met. Hence, no valid contract exists between the parties.

However, MCLA 46.171 *et seq.;* MSA 5.2767(1) *et seq.* is not applicable to the case at bar. This statute deals with contracts between a county and

[2] "Any controversy or claim arising out of or relating to this content [sic] or breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof."

[3] MCLA 46.171 *et seq.;* MSA 5.2767(1) *et seq.,* MCLA 141.101 *et seq.;* MSA 5.2731 *et seq.,* MCLA 41.411 *et seq.;* MSA 5.2411 *et seq.,* MCLA 41.721 *et seq.;* MSA 5.2770(51) *et seq.*

another unit of government, (city, village, *township),* not with contracts between a unit of government and a private firm.

Defendant directs us to MCLA 141.101 *et seq.;* MSA 5.2731 *et seq.,* which has been interpreted by the Supreme Court of this state to empower a township to enter into a contract for the construction of a sewer system.

"It was clearly the intention of the legislature to give townships the power and authority under the revenue bond act of 1933 to purchase, acquire, construct, improve, enlarge, extend, or repair a water supply system and a sewage disposal system, and to own, operate, and maintain the same, notwithstanding no bonds are issued in connection therewith." *Seltzer v Sterling Twp,* 371 Mich 214, 219; 123 NW2d 722 (1963).

"Section 1 of Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935 (Stat Ann § 5.2731), authorizes townships and other municipalities to acquire or construct various public improvements including water supply systems. This act has been held constitutional. *Young v City of Ann Arbor,* 267 Mich 241 [255 NW 579 (1934)].

"Section 2 of the act (Stat Ann § 5.2732) provides: 'This act shall be construed as cumulative authority for the purposes named in section one * * * it being the purpose and intention of this act to create an additional and alternate method for the purposes herein named.'

"Sections 5, 6, and 7 of the act direct the manner in which self-liquidating bonds may be issued and give authority for the issuance of such bonds, if the township so elects.

"The title of the act is so worded as to give first to the municipalities, including townships, authority to acquire or construct certain improvements (including water supply systems) and then, as an aid to carrying out such projects, the power to issue self-liquidating bonds. We can find nothing in the act which provides that only the money raised by such bond issue may be used to pay for such construction.

\*   \*   \*

"With authority being given to acquire or construct a public project as defined in the act, it must necessarily follow that authority to pay for the project is at the same time granted. The issuance of self-liquidating bonds is authorized as one means of so making payment, but it is not made an exclusive means of obtaining funds for such payment." *Morley Brothers v Township of Carrollton,* 305 Mich 285, 288–289; 9 NW2d 543 (1943).

Defendant contends that Gaines Township has the authority to enter into a contract for the construction of a sewer system under this act regardless of how the project is financed. The aforementioned cases clearly support such a conclusion.

Accordingly, we rule that plaintiff possessed the power and did in fact enter into a contract for engineering services in connection with the sewer system project.

Plaintiff next contends that the arbitration proceedings were invalid on the basis of several grounds.

Plaintiff first claims that the contract executed between the parties contained a common-law arbitration clause, and therefore either party could repudiate the arbitration proceedings at anytime.

Historically, common-law arbitration agreements could be revoked or repudiated at will by a party at any time prior to announcement of the award. Statutory arbitration is controlled by MCLA 600.5001 *et seq.;* MSA 27A.5001 *et seq.* and is irrevocable without consent of the other party, and "if either party neglects to appear before the arbitrators after due notice, the arbitrators may nevertheless proceed to hear and determine the matters submitted to them upon the evidence

produced by the other party". MCLA 600.5011; MSA 27A.5011.

This Court has held in *E E Tripp Excavating Contractor, Inc v Jackson County,* 60 Mich App 221; 230 NW2d 556 (1976), *lv den,* 394 Mich 834 (1975), that parties to a contract must clearly express their intent to invoke statutory arbitration in the contract.

To express this intent, the *Tripp* Court recommended the following language.[4]

" 'Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.' " *Tripp, supra,* at 241.

The language in the instant contract is virtually the same as the language set forth in the *Tripp* case, *supra.*

Consequently, we rule that the plaintiff did not possess the power to repudiate the arbitration agreement at will.

Plaintiff finally contends that the arbitrator exceeded his authority by including interest and attorney fees in the arbitration award.

Article II, § F of the contract called for payment for the engineering services "together with any terminal expense and including a reasonable profit".

The arbitrator interpreted this language to in-

---

[4] While *E E Tripp Excavating Contractor, Inc v Jackson County,* 60 Mich App 221; 230 NW2d 556 (1975), was decided after the formation of the contract in the instant matter, the Revised Judicature Act, which has been in effect since January 1, 1963, prescribes nearly identical language for the parties to use when expressing their intent to invoke statutory arbitration. MCLA 600.5001; MSA 27A.5001.

clude interest and attorney fees. While this Court can find no authority for awarding attorney fees under the circumstances in the instant matter, we are precluded from questioning the nature of the relief granted on the basis that such relief would not or could not be granted by this Court.

GCR 1963, 769.9(1) provides:

"Upon application of a party, the court shall vacate an award where:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(c) The arbitrators exceeded their powers; or

"(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing as to prejudice substantially the rights of a party.

*But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.*" (Emphasis supplied.)

It should also be noted that the plaintiff failed to file an application to vacate the arbitration award within the 20-day time period prescribed by the court rule. GCR 1963, 769.9(2).

Accordingly, we confirm the arbitrator's award.

Affirmed. Costs to appellee.