**COLUMBIA HEIGHTS FEDERATION OF TEACHERS LOCAL 710, et al., Petitioners, Appellants,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 13, COLUMBIA HEIGHTS, Respondent.**

**No. C5-89-2208.**

Court of Appeals of Minnesota.

July 17, 1990.

Review Denied Sept. 20, 1990.

---

**2.** The total amount of worker's compensation benefits paid to Flaherty was $87,755.85. Three times that amount is $263,267.55.

Bruce P. Grostephan, Peterson, Engberg & Peterson, Minneapolis, for appellants.

Patricia A. Maloney, Terrence J. Foy, Ratwik, Roszak, Bergstrom, Maloney & Bartel, P.A., Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and FORSBERG and SCHULTZ,* JJ.

## OPINION

LANSING, Presiding Judge.

This is an appeal from an order denying a motion to compel arbitration under Minn. Stat. § 572.09 (1988). At issue is whether the arbitration clause of the parties' collective bargaining agreement covers a dispute on a probationary teacher's right to be placed on unrequested leave of absence. We affirm the trial court's holding that the dispute is not arbitrable.

* Acting as judge of the Court of Appeals by ap-

## FACTS

Erin Rash was employed as a probationary music teacher in respondent school district during the 1988–89 school year. In April, 1989, the school board decided not to renew her contract. In an explanatory letter, the board stated:

> [Y]our contract will not be renewed because your background and experience in music education do not fit the future instructional needs of the school district. As enrollment declines within the school district, it is essential that we have staff members who have background and experience in vocal and instrumental music at both the elementary and secondary level. Your background is in vocal music and your experience is primarily elementary.
>
> \* \* \* \* \* \*
>
> I also want to assure you that this nonrenewal of your contract does not reflect on your performance as a teacher of elementary music. Rather it relates directly to your background and experience in instrumental and vocal music at the elementary as well as secondary level.

The contracts of eight other probationary teachers were also not renewed that year. Six of these teachers were placed on unrequested leave of absence, but Rash was not granted this status.

Rash filed a grievance protesting the school board's denial of her placement on unrequested leave of absence. Her grievance was denied and the board refused to proceed to arbitration. Rash petitioned the district court to issue an order compelling arbitration under Minn.Stat. § 572.09. The district court refused to order arbitration, asserting that the dispute was not within the scope of the bargaining agreement's arbitration clause. This appeal followed.

## ISSUE

Did the arbitration clause in the collective bargaining agreement cover the denial

pointment pursuant to Minn. Const. art. 6, § 2.

of unrequested leave status to a probationary teacher?

## ANALYSIS

■ Under the Uniform Arbitration Act, Minn.Stat. §§ 572.08–572.30 (1988), a trial court can compel arbitration if the parties have previously entered into an arbitration agreement which governs their controversy. Minn.Stat. § 572.09. The primary purpose of the act is to encourage and facilitate an informal and relatively inexpensive means of dispute resolution. *Layne-Minnesota Co. v. Regents Of University of Minnesota*, 266 Minn. 284, 287–88, 123 N.W.2d 371, 374 (1963).

Consistent with this purpose, the supreme court has offered the following guidelines for determining whether to compel arbitration:

(1) If the parties evinced a clear intent to arbitrate a controversy arising out of specific provisions of the contract, the matter is for the arbitrators to determine and not the court.

(2) If the intention of the parties is reasonably debatable as to the scope of the arbitration clause, the issue of arbitrability is to be initially determined by the arbitrators subject to the rights of either party reserved under Minn. [Stat. § 572.19] * * *.

(3) If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate.

*Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 341, 197 N.W.2d 448, 452 (1972).

■ In determining whether an arbitration agreement was meant to cover a particular dispute, we look to the language of the agreement. *Arrowhead Public Service Union v. City of Duluth*, 336 N.W.2d 68, 70 (Minn.1983). The arbitration clause in Rash's collective bargaining agreement provides:

Arbitration Procedures: In the event that the teacher and the school board are unable to resolve any grievance, the grievance may be submitted to arbitration as defined herein.

A grievance is defined in Article XIII, section 1 as

an allegation by an employee in the bargaining unit * * * that there has been to him/her/them a violation, misinterpretation or inequitable application of any of the provisions of this [collective bargaining] agreement.

The school board argues that this general arbitration language does not cover Rash's grievance because the board's decision to deny Rash unrequested leave of absence was expressly authorized by Minn. Stat. § 125.12, subd. 3 (1988):

* * * During the probationary period any annual contract with any teacher may or may not be renewed as the school board shall see fit * * *.

Rash argues that a probationary teacher's denial of unrequested leave status is arbitrable under Article V, section 9, subdivision 1 of the collective bargaining agreement.[1] According to Rash, subdivision 1 entitled her to be placed on unrequested leave of absence for the reasons described in Minn.Stat. § 125.12, subd. 6a.[2]

1. Article V, section 9, subdivision 1 provides in pertinent part:

   All licensed members of the teachers' unit employed on a regular contract shall have seniority commensurate with their total years of service in the District and in such areas as they may be licensed. * * * Also, teachers employed as replacements to regular staff who are on leave (acting incumbents) or as substitute teachers shall not receive seniority credit except that, if such teachers are subsequently offered a regular contract, the time

served as an acting incumbent shall be credited to the seniority of such persons.
   a) *Teachers shall be placed on unrequested leave of absence (lay-offs) for such reasons as described in M.S. 125.12, Subd. 6a, in reverse order of seniority, the least senior teacher receiving leave first.*

2. The reasons described in Minn.Stat. § 125.12, subd. 6a are as follows:
   discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts.

The factual context of Rash's grievance is similar to the circumstances in *Arrowhead*. In *Arrowhead*, public employees sought arbitration after being laid off because of budget reductions. The employees' union argued that the layoffs were arbitrable under the collective bargaining agreement. The supreme court disagreed, ruling that when a public employer negotiates issues which it has no duty to negotiate and thereby waives a statutory right, the intent to arbitrate those issues must be expressed by "clear and unmistakable language." *Id.* at 71–72.

Here, as in *Arrowhead*, the employer did not have a duty to negotiate a collective bargaining provision on layoffs. Under Minn.Stat. § 125.12, subd. 3, the school board was authorized not to renew the contracts of probationary teachers as it saw fit. The statute vests "unlimited discretion in the board with respect to renewal of a probationary teacher's contract." *See Skeim v. Independent School District No. 115*, 305 Minn. 464, 473, 234 N.W.2d 806, 812 (1975), (citing *Pearson v. Independent School District No. 716*, 290 Minn. 400, 188 N.W.2d 776 (1971)). This includes the right to deny requests by non-renewed probationary teachers for unrequested leaves of absence.

Applying the standard in *Arrowhead*, we believe that neither the general language of the arbitration clause nor the collective bargaining agreement, read as a whole, adequately expressed an intent to arbitrate a probationary teacher's unrequested leave of absence dispute. In fact, Article V, section 9, subdivision 2 of the collective bargaining agreement suggests that the grievance process, as it related to disputes over unrequested leaves of absence, was restricted to tenured teachers.[3]

In light of the statutory protection and the absence of clear and unmistakable language expressing an intent to arbitrate this dispute, we conclude that the trial court did not err in denying Rash's motion to compel arbitration. Because we resolve the issue on its merits it is unnecessary to address the district's claim that Rash's action is foreclosed by failing to proceed by writ of certiorari. *See Strand v. Special School District No. 1*, 392 N.W.2d 881, 883 (Minn. 1986).

## DECISION

We affirm the district court's order denying appellants' motion to compel arbitration.

Affirmed.

---

3.  Subdivision 2 provides in pertinent part:
    If a *tenured* teacher elects to follow the grievance procedure under Article XIII with respect to the placement on unrequested leave by Board action, the intent to submit the grievance to arbitration must be filed and the action commenced within ten (10) days. * * *.
    (Emphasis added). This provision, which was not addressed by the parties, is not essential to our decision.