**Debra Lynn ANDERSON and Roger Norman, Trustees for the Heirs at Law of Cynthia Renae Norman, deceased, Respondents,**

v.

**FEDERATED MUTUAL INSURANCE CO., a corporation, Appellant.**

**No. C0-90-1456.**

Court of Appeals of Minnesota.

Jan. 15, 1991.

Review Granted March 15, 1991.

Michael L. Lander, Bergeson, Lander & Megarry, P.A., Bloomington, for respondents.

Kenneth F. Johannson, Dickel, Johannson, Taylor & Rust, Crookston, for appellant.

Considered and decided by KALITOWSKI, P.J., and FOLEY and NORTON, JJ.

## OPINION

FOLEY, Judge.

Respondents Debra Lynn Anderson and Roger Norman, as trustees for the heirs of their daughter, Cynthia Renae Norman, sued Donald Grahn and O.K. Machine Co. for negligently causing Cynthia's death. Appellant Federated Mutual Insurance Co., insurer for Grahn and O.K. Machine, allegedly entered into an oral agreement with Anderson and Norman to submit their claim to binding arbitration. Anderson and Norman sued for enforcement of the oral agreement. The trial court ordered the parties to submit to binding arbitration and Federated appeals. We reverse.

## FACTS

On February 10, 1987, a car in which Cynthia was a passenger got stuck in a ditch. Grahn, an owner of O.K. Machine, agreed to use a truck owned by O.K. Machine to tow the car out of the ditch. On one of Grahn's attempts to pull the car out, the nylon tow rope was stretched to its limit and one end suddenly detached and whipped a metal clevis through the car's rear window, striking Cynthia in the head. She died shortly thereafter.

On March 24, 1988, Anderson, acting as trustee, sued Grahn and O.K. Machine. Norman subsequently joined the suit as co-trustee. Grahn forwarded the summons and complaint to Bob Bresnahan, a claims supervisor for Federated Mutual Insurance Company. Federated insured both Grahn and O.K. Machine.

On November 9, 1988, Martin Berg, an attorney acting on behalf of both Anderson and Norman, began to take part in ongoing settlement negotiations with Bresnahan. In his first conversation with Berg, Bresnahan asked about a stipulated maximum, or "cap," on the award if the parties agreed to arbitration. Berg said his clients would not agree to any figure less than $300,000.

Berg and Bresnahan again discussed arbitration on December 12, 1988. In a letter dated that day, Berg set out the terms of their "telephone agreement" to submit the matter to arbitration. Bresnahan's notes about the call show that he agreed to most of the terms in Berg's letter, but Bresnahan's notes conclude: "We'll confirm agreement in writing." Bresnahan called Berg on December 20, 1988, and told him that Federated would not agree to arbitration without a $100,000 cap. Bresnahan's notes do not indicate any discussion of a cap with Berg between November 9 and December 20, 1988.

Anderson and Norman sued Federated, seeking a judgment declaring the oral agreement to arbitrate the claim against Grahn and O.K. Machine to be enforceable. The trial court found there was an oral agreement to arbitrate and ordered binding arbitration under the terms of Berg's December 12, 1988 letter.

## ISSUE

Is an oral agreement to arbitrate enforceable in Minnesota?

## ANALYSIS

This case presents a question of law for the court that is "subject to de novo review on appeal." *In re Welfare of M.J.M.*, 416 N.W.2d 142, 146 (Minn.App.1987) (citing *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985)). The trial court's conclusions of law do not bind this court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

■ The Minnesota Uniform Arbitration Act provides: "A written agreement to submit any existing controversy to arbitration * * * is valid, enforceable, and irrevocable." Minn.Stat. § 572.08 (1988). Because the Minnesota Uniform Arbitration Act makes no provision for unwritten agreements, any alleged oral agreement cannot be enforced under the act. "The requirement that the arbitration clause be in writing * * * renders invalid mere oral arbitration agreements." Domke on Com-

mercial Arbitration § 6.01, at 73 (G. Wilner rev. ed.1984) [hereinafter Domke].

The parties agree there is no written agreement to arbitrate. Nonetheless, Anderson and Norman argue, and the trial court held, that an oral agreement is enforceable under Minnesota common law. We find common law arbitration has been superseded by the Minnesota Uniform Arbitration Act, Minn.Stat. §§ 572.08–.30. We further find oral agreements to arbitrate are unenforceable in Minnesota.

■ This interpretation is mandated by principles of statutory construction. When legislation and the common law conflict, legislation governs "because it is the latest expression of the law." 2A Statutes and Statutory Construction § 50.01, at 421 (C. Sands 4th ed.1984). For example, the Minnesota Supreme Court has ruled that a statute abrogated common law in the context of the collateral source rule for personal injury cases. *Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 331 (Minn.1990).

> The Minnesota Supreme Court has said: In re-enacting a statute, intention to change meaning may as clearly appear from the omission of old as by adding new language.

(*In re Estate of Cravens,* 177 Minn. 437, 440, 225 N.W. 398, 399 (1929), *quoted in Sterling Electric Co. v. Kent,* 233 Minn. 31, 34, 45 N.W.2d 709, 711 (1951)); *see also Garberg v. County of Hennepin,* 294 Minn. 450, 455, 202 N.W.2d 220, 223 (1972). The predecessor act to the Minnesota Uniform Arbitration Act expressly preserved common law arbitration. *See* Minn.Stat. § 572.01 (1953). The Minnesota legislature repealed the former act, including the provision for common law arbitration, when it enacted the Uniform Arbitration Act. *See* 1957 Minn.Laws ch. 633, § 24, subd. 4. The legislature clearly expressed its intention to abolish common law arbitration by omitting all reference to it when adopting the uniform act. *See* Minn.Stat. § 645.16(5) (1988) (when not explicit, the legislature's intention may be ascertained by considering former law).

Our decision here also is consistent with *Wirig v. Kinney Shoe Corp.,* 461 N.W.2d

374, 377–78 (Minn.1990). If not expressly, at least by necessary implication, the common law remedy of arbitration has been abrogated. *Id.; see also In re Shetsky,* 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953).

This interpretation of the Minnesota Uniform Arbitration Act is further supported by consideration of the object to be attained and the mischief to be remedied by the uniform act. *See* Minn.Stat. § 645.16(3) and (4) (1988). In most states which have adopted the Uniform Arbitration Act, one of the primary purposes given is the validation of arbitration agreements. Unif.Arbitration Act, 7 U.L.A. 1 (1986). However, agreements to arbitrate already were valid and enforceable under Minnesota statutory and common law prior to the adoption of the uniform act. *See Zelle v. Chicago & N.W.R. Co.,* 242 Minn. 439, 446–47, 65 N.W.2d 583, 589 (1954); *Park Constr. v. Independent School Dist. No. 32,* 209 Minn. 182, 186–87, 296 N.W. 475, 477 (1941); *Larson v. Nygaard,* 148 Minn. 104, 108, 180 N.W. 1002, 1003 (1921). Therefore, validation of arbitration agreements could not have been a reason for adoption of the act in Minnesota. *See* Pirsig, *The Minnesota Uniform Arbitration Act and the Lincoln Mills Case,* 42 Minn. L.Rev. 333, 335 (1958) [hereinafter *Minnesota Uniform Arbitration Act and Lincoln Mills*].

> This court has held:

> The primary purpose of the [uniform] act is to encourage and facilitate an informal and relatively inexpensive means of dispute resolution.

*Columbia Heights Fed'n of Teachers Local 710 v. Independent School Dist. No. 13,* 457 N.W.2d 775, 777 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 20, 1990). The uniform act encourages and facilitates use of arbitration in Minnesota by making the law governing arbitration more definite and certain and by making the law uniform with arbitration law in other states. As Pirsig stated:

> The prior Minnesota law on the subject was in a very unsatisfactory state. * * *

[The former act] was of very narrow compass. It applied only to agreements to arbitrate which complied with the technical form prescribed and in practice was seldom resorted to. Agreements not within the terms of the statute were governed by common law principles.

*Minnesota Uniform Arbitration Act and Lincoln Mills, supra* p. 70, at 333–34.

The differences between the arbitration laws of various states also have made commercial arbitration problematic, giving rise to difficult problems in the conflict of laws.

The growing confusion in the law relative to commercial arbitration resulting from the many conflicting provisions in the statutes of the several states and territories makes the adoption of a uniform legislation by all the states imperative. Uniformity on the subject is far more important than that the law include any particular provision either substantive or procedural. * * *

\* \* \* \* \* \*

* * * The unsettled problems inherent in the conflict of laws field make impossible definitive advice to clients as to their rights under an arbitration provision in a contract that is to be performed in more than one jurisdiction.

Carb, *The Need for Uniform Laws of Arbitration*, 15 Arb.J. 65, 65–66 (1960); *see also* Stern, *The Conflict of Laws in Commercial Arbitration*, 17 Law & Contemp. Probs. 567 (1952).

These concerns are expressly addressed in the Minnesota Uniform Arbitration Act, which provides:

This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Minn.Stat. § 572.28 (1988). This purpose cannot be achieved as long as each state continues to develop its own common law of arbitration through permitting arbitration to proceed under either the uniform act or the common law. The differences in the common law of the various states will give interstate commercial arbitration agreements uncertain effect, even if the state courts work to harmonize the deci-

sions which directly apply the Uniform Arbitration Act. Therefore, to make Minnesota law of arbitration more definite and uniform with the laws of other states adopting the uniform act, the act must supersede Minnesota common law of arbitration.

The guidelines for statutory interpretation further direct us to consider the consequences of suggested interpretations of a statute. Minn.Stat. § 645.16(6). Under our interpretation of the Minnesota Uniform Arbitration Act, an agreement to arbitrate is unenforceable unless it is in writing. As the Supreme Court of Connecticut stated:

The strict enforcement of the writing requirement in [the uniform act] is supported by policy considerations. First, and most apparent, is that this requirement eliminates the problems of proving an oral agreement. It is likely that the parties' understanding of a purported oral agreement to arbitrate will differ. The content of the agreement would then have to be determined by the court and this would not be as efficient or as easy as establishing the existence and content of a written agreement. The process of proving an oral agreement would not foster the stated purpose of arbitration of " 'avoiding the formalities, delay, expense and vexation of ordinary litigation.' " * * *

* * * Requiring a written agreement to arbitrate also encourages the parties to devise a written submission, which will clarify the rights of the parties for the purposes of both arbitration and judicial review.

*Bennett v. Meader*, 208 Conn. 352, 362–64, 545 A.2d 553, 558–59 (1988) (quoting *O & G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987) (quoting *Bridgeport v. Bridgeport Police Local 1159*, 183 Conn. 102, 107, 438 A.2d 1171 (1981))) (footnotes omitted).

Some commentators have suggested that retention of common law arbitration is valuable because if an arbitration proceeding fails to meet the technical re-

.quirements of the applicable statutes, the award may still be enforced as a common law award.

Carb, *supra* p. 71, at 66; *see* Sturges & Reckson, *Common–Law and Statutory Arbitration: Problems Arising From Their Coexistence*, 46 Minn.L.Rev. 819, 827–28 n. 24 (1962); *Minnesota Uniform Arbitration Act and Lincoln Mills*, *supra* p. 70, at 337. We disagree. The Uniform Arbitration Act minimizes technical requirements for enforceable arbitration.

> All that is required by the act is that the agreement to arbitrate be in writing. It need not be recorded, or acknowledged, or verified, or even signed.

Pirsig, *The New Uniform Arbitration Act*, 11 Bus.Law., April 1956, at 45; *see also Landmark Properties, Inc. v. Architects International–Chicago*, 172 Ill.App.3d 379, 383, 122 Ill.Dec. 344, 347, 526 N.E.2d 603, 606 (1988); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir.1987) (an agreement to arbitrate may bind a party even though he or she has not signed it).

The procedural requirements are similarly minimal. The statute requires only that the arbitrators conduct a hearing at which the parties are entitled to present evidence and cross-examine witnesses. Minn.Stat. § 572.12(b) and (c) (1988). Even the notice requirement is waived if both parties appear at the hearing. Minn.Stat. § 572.12(a).

We find the legislature intended to make the arbitrators' award unenforceable unless the act's few technical requirements are met. The advantages assured by strict enforcement of the writing requirement and abolition of common law arbitration far outweigh any disadvantages that may follow from this interpretation of the statute. Therefore, giving due regard to the consequences of this statutory interpretation, the uniform act must supersede the common law of arbitration.

We are aware courts of other states have held that common law arbitration coexists with arbitration under the uniform act. *See, e.g., Whitaker v. Seth E. Giem & Assocs., Inc.*, 85 Mich.App. 511, 513, 271 N.W.2d 296, 297 (1978); *see Domke, supra*

p. 69, 70, § 3.02, at 24. Of course, those courts do not construe the Minnesota legislature's intent, which is the only one we consider.

We acknowledge that we are primarily an error-correcting court. Minn.Ct.App.Internal R. 1. Where our appellate courts have not clearly addressed the central issue in a case, however, it is our duty to note the direction of developments and to anticipate changes in the law.

The Minnesota Supreme Court has stated in regard to interpretation of the Minnesota Uniform Arbitration Act: "The intent of the drafters of the act becomes the legislative intent upon enactment." *Layne–Minnesota Co. v. Regents of Univ. of Minn.*, 266 Minn. 284, 291 n. 13, 123 N.W.2d 371, 376 n. 13 (1963). Professor Maynard Pirsig chaired the Special Committee on the Uniform Arbitration Act of the National Conference of Commissioners on Uniform Laws. Professor Pirsig's subsequent writings support the result we reach here.

> The act does not apply to oral agreements to arbitrate. It was believed that the existence of an agreement should not be left to the uncertainties of an oral agreement. * * * An oral agreement to arbitrate a dispute, whether one then existing or to arise in the future, may have been enforceable under prior Minnesota law. If so, it might be argued that this continues to be the law since the Uniform Act does not explicitly provide otherwise. However, it is believed that the better construction of the act is that in providing that a "written" agreement to arbitrate is "valid, enforceable and irrevocable," the intent was to deny the same characteristics to an oral agreement.

*Minnesota Uniform Arbitration Act and Lincoln Mills*, *supra* p. 70, at 336–37 (footnotes omitted).

## DECISION

Because there is no written agreement between the parties enforceable under the Uniform Arbitration Act and because the Minnesota legislature abolished common

law arbitration when it enacted the Uniform Arbitration Act, the trial court erred in enforcing the parties' oral agreement. Accordingly, the judgment of the trial court ordering the parties to arbitrate their dispute under the terms of the alleged oral agreement is reversed.

Reversed.

NORTON, Judge (dissenting).

I respectfully dissent. When the Minnesota legislature adopted an act "to validate arbitration agreements," it did not intend to nullify arbitration agreements which were valid and enforceable under prior Minnesota law. Unif.Arbitration Act, 7 U.L.A. 1 (1986).

The Minnesota Uniform Arbitration Act does not expressly affect the availability of common law arbitration. *See* Minn.Stat. § 572.08–.30 (1988). "Ordinarily statutes are presumed not to alter or modify the common law unless they expressly so provide." *Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson*, 272 Minn. 156, 166, 136 N.W.2d 861, 868 (1965) (citations omitted).

Legislation supersedes common law "[i]n cases of conflict between legislation and the common law," but here there is no conflict. 2A Statutes and Statutory Construction § 50.01, at 421 (C. Sands 4th ed. 1984). Under Minnesota common law, oral agreements to arbitrate are valid, and an award made following arbitration based on an oral agreement is enforceable. *See Larson v. Nygaard*, 148 Minn. 104, 108,.180 N.W. 1002, 1003 (1921). The Minnesota Uniform Arbitration Act provides that "[a] written agreement to submit any existing controversy to arbitration * * * is valid, enforceable, and irrevocable." Minn.Stat. § 572.08. There is no conflict between these principles, just as there is no conflict between the holdings of *Larson* and *Park Constr. v. Independent School Dist. No. 32*, 209 Minn. 182, 186–87, 296 N.W. 475, 477 (1941) (holding a written agreement to arbitrate valid and enforceable under the common law).

The courts of other states have found no conflict between statutes that declare written arbitration agreements valid and the common law principle that oral agreements to arbitrate are valid. *See, e.g., Shaw v. State*, 125 Ala. 80, 84, 28 So. 390, 391 (1899); *Lilley v. Tuttle*, 52 Colo. 121, 127, 117 P. 896, 898 (1911) (citations omitted); *Halvorson–Mason Corp. v. Emerick Constr. Co.*, 304 Or. 407, 412, 745 P.2d 1221, 1224 (1987); *Wetzel v. Sullivan, King & Sabom, P.C.*, 745 S.W.2d 78, 81 (Tex.App.1988) (citations omitted). *But see, e.g., Bennett v. Meader*, 208 Conn. 352, 359, 545 A.2d 553, 557 (1988). *See generally* 5 Am.Jur.2d *Arbitration and Award* § 13, at 530 (1962) (statutes making written agreements prerequisite to statutory arbitration do not invalidate oral arbitration agreements under common law).

Minnesota's former Arbitration Act included a provision for the preservation of common law arbitration. Minn.Stat. § 572.01 (1953). The majority argues that, because the legislature repealed this act when it adopted the Uniform Arbitration Act, it intended to eliminate common law arbitration. It is likely that the Minnesota legislature would have had no reason to believe that Minnesota courts would construe the Uniform Arbitration Act as an exclusive remedy eliminating common law arbitration.

Before 1957, when Minnesota adopted the Uniform Arbitration Act, several states adopted arbitration statutes which, like the uniform act and unlike Minnesota's earlier Arbitration Act, made no provision for preservation of common law arbitration. Those statutes were generally construed to allow continued use of common law arbitration. *E.g., First Baptist Church (Colored) v. Hall*, 246 S.W.2d 464, 465 (Ky.1952); *Harwell v. Home Mut. Fire Ins. Co.*, 228 S.C. 594, 600, 91 S.E.2d 273, 276 (1956); *see* Sturges & Reckson, *Common–Law and Statutory Arbitration: Problems Arising From Their Coexistence*, 46 Minn.L.Rev. 819, 827–28 n. 24 (1962). New York courts, in particular, found that the New York Arbitration Act had no effect on the availability of common law arbitration. *Jones v. John A. Johnson & Sons, Inc.*, 129 N.Y. S.2d 479, 481 (N.Y.Sup.Ct.1954) (parties' agreement did not provide that arbitration

proceedings be conducted solely under arbitration statutes), *aff'd* 283 A.D. 1085, 131 N.Y.S.2d 362 (1954). As the Minnesota Supreme Court has noted, the New York act was the model for the Uniform Arbitration Act. *Layne–Minnesota Co. v. Regents of the Univ. of Minn.*, 266 Minn. 284, 289 n. 12, 123 N.W.2d 371, 375 n. 12 (1963).

Additionally, prior to 1965, when Texas adopted the Uniform Arbitration Act, the Texas arbitration statutes included a provision which preserved the right to common law arbitration. Tex.Rev.Civ.Stat.Ann., Title 10 historical note to art. 238, at 12 (Vernon 1973). That provision was repealed, and the Texas legislature, like the Minnesota legislature, chose not to include a similar provision in its version of the uniform act. In *Carpenter v. North River Ins. Co.*, 436 S.W.2d 549 (Tex.Civ.App. 1968), the court stated:

> While the present general arbitration statutes do not have language specifically reserving to the disputants the right to resort to common law arbitration, neither do they have any language purporting to render common law arbitration invalid. * * *
>
> [T]he Legislature in repealing Art. 238 and in not including similar language in the amended arbitration statutes, did not intend to deprive the parties of the common law procedure for arbitrating their existing disputes or accrued causes of action.

*Id.* at 553. The Minnesota legislature, like the Texas legislature, did not intend to discard common law arbitration when it adopted the Uniform Arbitration Act.

In *Layne–Minnesota* the court found that "the records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the [special committee] that undertook the drafting of the act" are especially useful for discerning legislative intent for uniform laws. *Id.* 266 Minn. at 290, 123 N.W.2d at 376. Maynard Pirsig, chair of the committee which drafted the Uniform Arbitration Act, stated:

> The act does not extend to oral arbitration agreements as to which the common law principles will continue to apply.

Pirsig, *Some Comments on Arbitration Legislation and the Uniform Act*, 10 Vanderbilt L.Rev. 685, 691–92 (1957). The records of the National Conference suggest that none of the participants proposed that the uniform act should eliminate common law arbitration, with only one participant mentioning the possibility of any effect on common law arbitration. *See* Memorandum to Dean E.B. Stason, Professor R.A. Smith, and Professor W.J. Pierce (Aug. 5, 1954), in 1954 Annual Meeting Nat'l Conf. of Commissioners on Uniform State Laws, Unif.Arbitration Act, pt. 13 (Aug. 9–14, 1954).

Moreover, the act itself relies upon the continued availability of common law arbitration. The act expressly states that it applies "to arbitration agreements between employers and employees * * * unless otherwise provided in the agreement." Minn. Stat. § 572.08. Under the majority's decision, if employers and employees agree to arbitration, and provide that arbitration shall not be governed by the act, as the act expressly allows, the agreement invalidates itself. Thus, if an agreement provides that it shall not be enforceable under the uniform act, then there is no common law of arbitration under which the agreement could be enforced, even after arbitrators have completed proceedings and rendered an award. Since the legislature expressly provided for these agreements, it must have intended that they would remain valid and enforceable under common law.

The majority adopts the reasoning used by the Supreme Court of Connecticut in *Bennett*. In that case the plaintiffs and the defendants' insurer entered into an oral agreement to arbitrate a claim under the rules of the American Arbitration Association (AAA). The parties agreed on an arbitrator selected by the AAA, and at the conclusion of the hearing the arbitrator, in writing, awarded plaintiffs an amount substantially less than the insurer's final settlement offer. *Bennett*, 208 Conn. at 354, 545 A.2d at 554. The supreme court affirmed the trial court vacating the award

solely on the grounds that the agreement to arbitrate was unwritten, and therefore, did not qualify as a statutory proceeding under the Uniform Arbitration Act. *Id.* at 364, 545 A.2d at 559.

Pirsig and other commentators have argued that the uniform act should not be construed as eliminating common law arbitration primarily to avoid the result reached in *Bennett.* As Pirsig has stated:

> Of course, if, under an oral agreement, a dispute has in fact been submitted to an arbitrator and he has rendered an award in writing, the award should be sustained even though the original agreement was oral.

Pirsig, *The Minnesota Uniform Arbitration Act and the Lincoln Mills Case,* 42 Minn.L.Rev. 333, 337 (1958). *See* Carb, *The Need for Uniform Laws of Arbitration,* 15 Arb.J. 65, 66 (1960). Adoption of the *Bennett* decision will cause both courts and arbitrators to waste substantial time and effort.

The majority recognizes that one purpose of the uniform act is "to make uniform the law of those states which enact it." Minn. Stat. § 572.28 (1988). However, the majority does not follow decisions of other state courts which have found that the Uniform Arbitration Act does not eliminate common law arbitration. *See, e.g., Board of Educ. v. Prince George's County Educators' Ass'n,* 309 Md. 85, 96–98, 522 A.2d 931, 936–37 (1987); *Pittsfield Gen. Hosp. v. Markus,* 355 Mass. 519, 522–23, 246 N.E.2d 444, 446 (1969); *Township of Gaines v. Carlson, Hohloch, Mitchell and Piotrowski, Inc.,* 79 Mich.App. 523, 528–29, 261 N.W.2d 71, 73–74 (1977) (citation omitted); *Daniels Ins. Agency v. Jordan,* 99 N.M. 297, 299, 657 P.2d 624, 626 (1982) (where Act conflicts with common law, provisions of Act govern) (citation omitted); *Wetzel,* 745 S.W.2d at 81. A uniform act will not operate uniformly if state courts ignore consistent precedent from other states. As long as parties to commercial contracts are capable of invoking the protections of the uniform act by so providing in their contracts, the problems for commercial arbitration which the majority foresees will be adequately addressed without eliminating common law arbitration. *See* Carb, *supra* p. 75, at 66.

Based on its view of policies regarding commercial arbitration and resolution of disputes, the majority has decided to eliminate common law arbitration. The Minnesota Supreme Court has consistently expressed a policy favoring arbitration. *Layne–Minnesota,* 266 Minn. at 288 n. 5, 123 N.W.2d at 374–75 n. 5; *Zelle v. Chicago & N.W. Ry.,* 242 Minn. 439, 446, 65 N.W.2d 583, 589 (1954); *Larson,* 148 Minn. at 108, 180 N.W. at 1003. This court is an "error correcting rather than a legislative or doctrinal court." Minn.Ct.App.Internal R. 1. In consideration of the longstanding policy favoring arbitration, a decision eliminating common law arbitration on the basis of the Uniform Arbitration Act should be left to the supreme court.